### UNITED STATES v. HOLT.
### No. 6987.

Circuit Court of Appeals, Seventh Circuit.
Nov. 27, 1939.

Rehearing Denied Jan. 13, 1940.

Homer Elliott, of Martinsville, Ind., and William H. Dieterich, of Beardstown, Ill., for appellant.

Val Nolan, U. S. Atty., and B. Howard Caughran and Paul A. Pfister, Asst. U. S. Attys., all of Indianapolis, Ind., for appellee.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

The appellant and ten others were jointly indicted for a conspiracy to defraud the United States under Section 37 of the Criminal Code (R.S. § 5440; 18 U.S.C.A. § 88). The case was tried to a jury. At the close of all the evidence, the court sustained motions for a directed verdict as to three defendants: The jury returned verdicts of not guilty as to two of the defendants, verdicts of guilty as to appellant and defendants George Mix, Carl J. Broo, George H. Morrow, Mel Good and Lincoln F. Record, and judgments were rendered upon the verdicts. Appellant was sentenced to imprisonment for a term of fifteen months and ordered to pay a fine of $5,000. He alone appeals.

The indictment in substance charged that the Works Progress Administration of the United States government was engaged in the conduct and operation of approved projects in Kokomo, Indiana, for which the United States government employed and paid for the services of laborers, truck drivers, foremen, and others; that Holt, Mix, Broo, Morrow and Good were officers and employees of the city of Kokomo and, as such officers and employees, had charge and supervision of the buying of materials for the city of Kokomo and the payment therefor, with moneys of the city; that

Record was an employee of the Works Progress Administration and had charge and supervision of said laborers employed and paid by the Works Progress Administration; that it was a part of the conspiracy that Mix would purchase and acquire brick structures in Kokomo, whereupon, without lawful authority so to do and with the use of the services and labor of said laborers who were in the employ of and being paid by the United States to conduct and operate the approved Works Progress Administration projects, the defendants would cause said structures to be demolished and razed, and would cause the bricks thereof to be removed, hauled to other sites and cleaned, processed and made marketable as used brick, it being a part of the conspiracy, by the use of the services of said laborers of the Works Progress Administration, to increase materially the market value of said bricks over and in excess of the market value thereof while they formed a part of said structures; that when said bricks were cleaned and made marketable, the defendants would cause the city of Kokomo to purchase them from Mix at prices materially in excess of their value before they had been cleaned.

The indictment further charged that as part of the conspiracy the defendants, without lawful authority so to do, and notwithstanding that said laborers were in the employ of and were being paid by the United States government to work exclusively on and to operate the approved Works Progress Administration projects, diverted said laborers from said projects and used their services on the aforesaid enterprises. The indictment also alleged as overt acts Holt's approval of the claims filed with the Board of Public Works.

In his appeal appellant asserts and urges consideration of the following assigned errors: (1) denying his motion for a directed verdict of not guilty; (2) overruling motion for a new trial; (3) improper admission of evidence; and (4) prejudicial remarks of the District Attorney.

Appellant was the Mayor, Good city clerk, Morrow city engineer and Broo city attorney, for the city of Kokomo. Mix was assistant city engineer and Record was a Works Progress Administration project supervisor on street projects. Neither appellant, Good, Morrow, Broo nor Mix testified at the trial.

There were four projects sponsored by the city of Kokomo and accepted by the Works Progress Administration. The projects were constructed with labor furnished by the Works Progress Administration and included the relaying and correcting of grade lines, the rebuilding of manholes of storm and sanitary sewers, the repairing and the improvement of public streets and alleys.

According to the project proposals, Morrow (the city engineer) prepared the plans and specifications, and also superintended the work performed by employees of the Works Progress Administration. Among other things, the projects called for large quantities of brick, and these materials the city of Kokomo furnished.

In turn the city was required to purchase the brick necessary for the projects, and the purchases were made in this way. Mix (the assistant engineer) would buy certain brick buildings from owners on the following terms: he would raze the buildings, remove the bricks, and pay $4 per thousand for them. On one occasion, while negotiating for the purchase of bricks, Mix refused to accept an offer of cleaned bricks at $7 per thousand, stating that he could buy uncleaned bricks at $4 per thousand. This statement is interesting in view of the fact that the city of Kokomo made its purchase through Mix at $10 per thousand.

The task of razing and removing the bricks was done by the Works Progress Administration employees under the direction and bidding of Record (the Works Progress Administration project supervisor). Record, formerly an employee of the city of Kokomo, had accepted the job of supervisor. Although he worked under and was paid by the Works Progress Administration, he continued to receive $75 per month from the city, the $75 claim purporting falsely to represent rental on equipment used. It is to be noted that no sooner had Record been discharged by the Works Progress Administration than he was employed again as an employee of the city by the appellant (the mayor).

After the bricks were razed and removed, they were cleaned and made marketable, again by Works Progress Administration labor and consequently at the expense of the United States. Then the bricks were sold by Mix to the city at $10 per thousand. To obtain payment for the bricks, it was necessary for Mix to file claims with the city. First, the claims were sworn to before Good (the city clerk). Then, the

claims were presented to the Board of Public Works for approval.

As soon as the Mix claims were approved in writing by the Board of Public Works, consisting of the appellant (the mayor) and his co-defendants Broo and Morrow (city attorney and engineer, respectively), they were paid. The testimony of Thomas G. Heady is significant in connection herewith. Mix had asked to use Heady's name in the filing of claims. According to Heady, Mix gave the following reason for the request to use Heady's name: the Board of Public Works had warned Mix that it was dangerous to sign the brick claims in Mix's name; the Board had suggested, therefore, that Mix should file and sign the claims in another name, so that the public would not suspect anything.

### Denying His Motion for a Directed Verdict of Not Guilty.

This assignment of error in effect raises the question whether there was any substantial evidence to incriminate appellant in a conspiracy to defraud the United States as charged in the indictment, warranting submission of the case to the jury.

At the outset we are met with the contention that the indictment charges a conspiracy to commit an offense against the United States in violation of Section 9 of the Emergency Relief Appropriation Act of 1935 (49 Stat. 118). We cannot agree. In our opinion the indictment charges a conspiracy to defraud the United States under Section 37 of the Criminal Code, 18 U.S.C.A. § 88, which provides that "If two or more persons conspire * * * to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,-000, or imprisoned not more than two years, or both." See Hammerschmidt v. United States, 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968; Falter v. United States, 2 Cir., 23 F.2d 420; United States v. Harding, 65 App.D.C. 161, 81 F.2d 563; and Hills v. United States, 9 Cir., 97 F.2d 710.

[2, 3] To sustain a charge of conspiracy, the Government need not furnish proof of the unlawful plan or agreement, but such charge may be sustained by evidence showing concert of action in the commission of the unlawful act, or by proof of other facts from which the natural inference arises that the unlawful acts were in furtherance of a common design of the alleged conspiracy. The crime is frequently established as a result of inferences drawn from the acts of the person accused which may be considered in determining whether a conspiracy exists. In other words, if the evidence of successive details of the scheme as it was carried out indicates with the requisite certainty the existence of a preconceived plan, it is sufficient to constitute an unlawful conspiracy, and it is not essential that all contribute alike either to the making of the scheme or to its fulfillment, and what one does, pursuant to their common purpose, all do.

It is undisputed that Morrow as city engineer knew that the bricks belonged to Mix, his assistant; that Morrow requested Works Progress Administration labor be used to clean the bricks, knowing that after they were processed the bricks were to be sold to the city; that the object of the conspiracy was to defraud the United States; and that the objective was attained.

But it is insisted that the selling of the bricks to the city was a legal innocent act; that there is not a circumstance implicating appellant as joining in or having a knowledge of the conspiracy entered into between Morrow and Mix; and that appellant's only connection with the sale and purchase of the bricks was the affixing of his signature to the approval of the claims, in the performance of his duties as mayor and ex officio member of the Board of Public Works.

To carry this conspiracy to a successful conclusion it was necessary that unclean brick be purchased; that the brick be processed and made marketable; and that they be sold and the selling price collected. Mix saw to the purchase. Morrow requested that Works Progress Administration labor be diverted to clean the brick. Good was necessary to file the claims in Mix's name or in the name of some one designated by him. And Broo, Morrow and appellant were needed to approve and to allow the claims for payment.

True it is, that if the evidence is as consistent with the innocence of the appellant as with his guilt, no conviction can be had. It is equally true that overt acts of the parties may be considered with other evidence and attending circumstances in determining whether a conspiracy exists, and where the overt acts are of the character which are usually, if not necessarily, done pursuant to a previous scheme and plan, proof of the

acts has a tendency to show such pre-existing conspiracy, so that when proven they may be considered as evidence of the conspiracy charged. Galatas v. United States, 8 Cir., 80 F.2d 15, 23.

The facts we have recited are proved by undisputed evidence, rendering it clear that the case presented a jury question. United States v. Morley, 7 Cir., 99 F.2d 683, 685, certiorari denied 306 U.S. 631, 59 S.Ct. 463, 83 L.Ed. 1033. In the Morley case, supra, it was claimed that the evidence did not show him to be a participant in the fraudulent scheme, and that Morley was guilty of negligence only, for which he might be liable in a civil suit. In disposing of this contention, it was said:

"* * * defendant has not necessarily established a case for a directed verdict in his favor by professing innocence and denying the existence of criminal intent. If the established facts and inescapable inferences are inconsistent with the accused's professions of innocence, it becomes the problem of the jury to weigh the evidence and determine, under proper instructions dealing with quantum of proof necessary to convict, the guilt or innocence of the accused.

"* * * Only by weighing the acts of the accused against his professions of innocence when they are inconsistent, can the fact finding body reach an intelligent verdict or finding. If the accused's acts and assurances are reconcilable, then no jury question is presented and the defendant should be dismissed. If, however, there be irreconcilability—if the acts of the accused dispute his assurances of innocence and the conflict is vital, then the court must let the jury weigh the conflicting evidence and decide."

The trial court, in passing upon the motion to direct a verdict of not guilty in this case, could not ignore the facts hereinbefore set forth, and the inferences which flowed therefrom. There was ample proof of acts and indubitable inferences therefrom which, if believed, would warrant an inference of fraudulent intent and guilty knowledge to the exclusion of every reasonable hypothesis of innocence. For this reason we believe the court did not err in refusing to direct the jury to find the appellant not guilty.

### Overruling Motion For A New Trial.

 This assignment of error does not justify lengthy discussion as it is well set-tled that the disposition of a motion for a new trial rests within the sound discretion of the trial judge. He may set aside the verdict and grant a new trial, notwithstanding the evidence is conflicting. But his action in so doing or refusing is not subject to review by this court except for clear abuse of discretion. Allen v. United States, 7 Cir., 4 F.2d 688; Alvarado v. United States, 9 Cir., 9 F.2d 385; Dale v. United States, 7 Cir., 66 F.2d 666; United States v. Porter, 7 Cir., 96 F.2d 773 and Smith v. United States, 4 Cir., 106 F.2d 726.

### Improper Admission of Evidence.

This general assignment of error is based on the contention that the jury was misled by testimony which was developed in the cross-examination of Record. No objection or exception was taken to the testimony referred to. Notwithstanding that fact, we have nevertheless examined this assigned error and found it without merit.

### Prejudicial Remarks of the District Attorney.

 It is insisted that the District Attorney exceeded his privilege in the argument to the jury, and thus deprived appellant of a fair trial. No objections to the argument were made or exceptions taken, nor was the trial court asked to make a ruling thereon. Nevertheless we have examined this assigned error.

In the argument the District Attorney said: "The Board of Public Works, * * * Holt, Broo, and Morrow, told Record that they would pay him $75 a month, they would help him deceive the Works Progress Administration, * * * they would help him get around that, * * * he could file claims indicating that he was renting equipment. * * * That is Mr. Holt, sitting there so pompously this week shaking his head in disapproval of my argument. I say to you, Holt, you should have shaken your head back there in Kokomo and stopped the payment of this money." And later in the argument he said "The Mayor, this despicable mayor, elected by the people of his community, given the highest office within their gift, sworn to uphold the law as the chief law enforcement officer of the community, with no higher duty to perform, * * * than to conserve and take care of those public funds which the people of the city of Kokomo paid into the treasury of the community; this mayor and his city attorney, and his city engineer had to approve these claims

and authorize the city clerk to pay for these products in order for the ultimate point of Mix's scheme to be successful."

The District Attorney, in his argument to the jury, should confine himself to a discussion of the facts disclosed by the evidence or legitimate inferences deducible therefrom. He has the right to denounce a defendant as guilty of crime charged, if the evidence fairly tends to prove his guilt, and to draw inferences unfavorable to the defendant, if based on the evidence and such circumstances as reflect unfavorably on the defendant.

It is true, the District Attorney used strong, vigorous and forcible language in the course of his argument, yet we cannot say that he was not justified or that he was not within the scope of proper and fair argument. We believe his conduct was not of such character as to demand a reversal of the judgment.

Judgment affirmed.