GAYNOR ET AL. *v.* STATE OF INDIANA.

[No. 30,233. Filed June 17, 1966.]

*Charles K. Whitted* and *Bernard M. Tetek,* of Gary, for appellants.

*John J. Dillon,* Attorney General, and *Carl E. Van Dorn,* Deputy Attorney General, for appellee.

MYERS, J.—Appellants herein, being Joseph Gaynor, Carmen Apicella and Cass Casmir, were charged by indictment with the crime of conspiracy to commit second-degree burglary in that they did unlawfully, knowingly and feloniously combine, conspire, confederate and agree to and with each other in the felonious intent to burglariously break and enter a business building wherein was located the tavern (hereinafter called State Tavern) of Vasco and Vincent Cataldi to unlawfully take and carry away the personal goods and property of the Cataldis.

Appearing in court by counsel, each of appellants waived trial by jury and entered a plea of not guilty. A change of

judge was taken, and the cause was tried to the court before the Hon. Louis C. Holland as Special Judge. Each appellant was found guilty and was sentenced to a term of not less than two nor more than fourteen years in the Indiana State Prison and fined the sum of $25 and costs. Appellant Casmir's sentence was suspended during his good behavior and he was placed on probation. A motion for new trial was filed and overruled. This appeal followed.

The overruling of the motion for new trial is relied upon as the basis for the assignment of errors. Among the specifications of error in the motion are that the finding of the court was not sustained by sufficient evidence and was contrary to law.

Evidence most favorable to appellee reveals that about 3:00 a.m. on the morning of December 30, 1960, a Hammond, Indiana, police officer, Trulan Merritt, was patrolling the area surrounding the State Tavern. He was acquainted by sight with appellant Casmir. At that time, he first saw Casmir in a 1960 model white-over-red Chevrolet with the left-front parking light out, about a half block from the State Tavern. A few minutes later he saw this Chevrolet near the State Tavern, and there were three occupants in the car whom he could not identify. The third time, he saw the same car with three occupants park near the Tavern and leave. The car came back and there was only one person in it who was identified by the officer as Casmir, who left with the lights off. This all happened within a period of minutes. The car turned into the street directly even with the Tavern and stopped. Two men came from the rear of the Tavern and got into the car which drove off. At that time, the officer checked the safe in the Tavern which was located from the front door to the left and was behind the bar inside the front window. It was not visible from the sidewalk, but could be seen from the window in the door to the left. Upon inspection, he could not see the safe—there was only a vacant spot. He went around to the rear of the building where there

was some construction work and remodeling wherein there was a hole filled with insulation and air ducts. Upon returning to the front of the building, the same car passed him again going south.

The officer called the police station, and subsequently the owner came to the Tavern. The officer admitted that he saw no one in the Tavern, nor did he see the appellants therein. However, he states that the two men who came out of the rear of the Tavern were approximately six feet tall; one wore a dark coat, fingertip length, and the other appeared to have on a jacket and cap. At the line-up in the police station the next day, appellant Gaynor had on a cap and was wearing a sweater; both were dressed in dark fingertip coats.

Another police officer from Hammond, Edward Herkey, testified that he was acquainted with appellant Casmir and saw him on the morning of December 30, 1960, about 3:45 a.m., in a red-and-white 1960 Chevrolet with two other male adults. The officer was sitting in a gas station, on a street known as Willow Court, while on a walking beat. Casmir's car had come to a halt for a passing train at a crossing. Behind him came a Hammond police car which put a spotlight in the rear window. It was driven by Officer Mamala, who had known appellant Casmir for about twelve years. Casmir got out of his car, went to Officer Mamala's squad car and exchanged New Year's greetings. During this time, Officer Mamala noticed some one in the front seat of Casmir's car. Then they departed. According to Officer Herkey, Casmir's car went west on Willow Court about one hundred yards, then stopped. A man got out with a cardboard box, which he placed under a truck along the railroad tracks which ran parallel to Willow Court. He was stated to be slender, medium build and height, dressed in a jacket sweater and ski cap. After he placed the box under the truck, he returned to the car, got in and was driven off. Officer Herkey went to see what was in the box. It contained two revolvers, a crowbar, large hammer, a screwdriver, pipe

wrench, some chisels and punches. The officer called the station after dumping the contents into another box and taking the original back where he found it. Ten minutes later he saw Casmir crossing the railroad tracks. He was stopped by Officers Mamala and Snyder. There were three of them who were handcuffed, and Officer Herkey identified them as appellants, Casmir, Gaynor and Apicella.

One of the owners of the Tavern, Vasco Cataldi, stated that he had closed the Tavern at five or ten minutes after 1:00 a.m. and left it intact. When he returned at 3:00 a.m. there was a broken door frame, the door between the kitchen and dining-room was broken and pried open and the lock was broken. The safe was inside by the back door in the private dining-room, having been moved at least seventy-five feet. There were tracks on the floor made by wheeling the safe. These were not there when he went home. The door had a mark of some kind of tool that pried the lock off which looked like a screwdriver with a face about three-quarters of an inch wide.

The screwdriver, a section of the doorjamb with tool impressions in the area of the lock or catch, a pair of gloves found in the Chevrolet, some insulation material from an air duct in the Tavern, together with a black jacket, were all sent to the FBI Laboratory in Washington, D. C., for examination. A Special Agent of the FBI testified that the screwdriver had made one of the marks on the door-jamb. It was also determined that the material found on the gloves was similar to the insulating material found in the air duct. No wood fiber could be found on the jacket.

It has been held that a conspiracy does not need to rest solely on words giving rise to an express agreement, but may be inferred from acts and conduct of the persons accused done in pursuance of an apparent criminal or unlawful purpose in common between them. *Smith, Peak v. State* (1961), 241 Ind. 311, 170 N. E. 2d 794; *Steffler v. State* (1952), 230 Ind. 557, 104 N. E. 2d 729.

There was sufficient evidence presented herein upon which the court could have found appellants guilty as charged, ■ so the finding of the court is not contrary to law. *Chappell* v. *State* (1940), 216 Ind. 666, 25 N. E. 2d 999.

Appellants claim that there was a variance between the allegations in the indictment and proof of ownership of the Tavern. The indictment alleges joint ownership, while ■ the proof indicates ownership by only one person, Vasco Cataldi. There is no evidence that this variance tended to prejudice the substantial rights of appellants on the merits of this case such as to cause reversible error.

"No indictment or affidavit shall be deemed invalid, nor shall the same be set aside or quashed, nor shall the trial, judgment or other proceeding, be stayed, arrested or in any manner affected for any of the following defects: * * *

"Tenth. For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." Burns' Ind. Stat., § 9-1127 (Tenth), 1956 Replacement; *Lucas* v. *State* (1918), 187 Ind. 709, 121 N. E. 274.

This variance does not constitute reversible error.

Appellants argue the rule that merely being present in the vicinity or being present when a crime is committed is not enough to make a person guilty of a conspiracy to ■ commit a crime, citing *Carey* v. *State* (1924), 194 Ind. 626, 144 N. E. 22. While this is the general rule, the facts set forth previously in this opinion are sufficient to overcome the presumption of innocence, so that the rule is not applicable.

Next, it is urged that the court committed error in admitting certain State's Exhibits without formal offer on the part of the State or giving the defendants a chance to state objections and be heard thereon; that the court summarily admitted them on its own motion. Those exhibits were such as the doorjamb, the screwdriver, the pair of gloves, the insulating material, pieces of sheet metal, the cardboard box, the tools and others. In each case, appellants' counsel made

general objections to the introduction of these exhibits, but was interrupted by the Judge, who several times stated that he would receive them in evidence pending a ruling on the objection.

As to State's Exhibit 22, the following colloquy took place:

"THE COURT:

"Q. Are you going to offer State's Exhibit No. 22 separately?

"A. I would like to.

"THE COURT:

"All right.

"MR. TETEK:

"The defendants object to the introduction of said exhibits and reserve the right to be heard on the objection.

"THE COURT:

"All right, I will reserve my ruling.

"* * *

"THE COURT INTERRUPTING:

"So there will be no misunderstanding every exhibit the State has marked and tendered has been introduced and made a part of the record, so there is no mistake, all are in the record, so the chain is properly connected, I feel they should be in now."

This was the tenor of the court's remarks upon the introduction of each of State's Exhibits—that a ruling would be reserved on the objections. Counsel for appellants reserved the right to be heard on the objections, but the record does not show that any objections were presented afterward and heard by the court. Nor does the record show that appellants were not given the opportunity to state and argue their objections at any time before the conclusion of the trial. They attempt to argue in their brief reasons for the inadmissibility of the exhibits. It is the rule that on appeal, an appellant is held to the same objections which were made to the trial judge. He may not enlarge these objections on appeal. *Richeson alias etc.* v. *State* (1953), 233 Ind. 1, 4, 116 N. E. 2d 101, and cases cited. The objections herein were general in nature, and stated no specific grounds.

These are not available as causes for reversal. *Pocker* v. *State* (1926), 197 Ind. 599, 600, 601, 150 N. E. 408. In fact, the objections are waived and cannot be considered by the court. *Heyverests* v. *State* (1931), 202 Ind. 359, 362, 363, 174 N. E. 710.

Appellants contend that it was error for the trial court to frequently interrupt counsel and to interrogate the witnesses, and that such was an abuse of discretion as a result of which appellants were prevented from having a fair trial. It has been held that it is the duty of the Judge in a criminal case to see that the truth is developed and for this purpose he has the right to propound proper questions to the witnesses without partiality. *Long et al.* v. *State* (1884), 95 Ind. 481, 487. Remarks by the Judge during the progress of a trial, even if erroneous, do not always amount to reversible error if the questioned action of the court was not harmful to the complaining party or tended to interfere with a fair trial. *Rhodes* v. *State* (1930), 202 Ind. 159, 169, 171 N. E. 301, 172 N. E. 176.

Appellants admit the Judge was not motivated by ill will or malice, but was a former Deputy Prosecutor, a practicing lawyer, and without experience as a Judge; that as Deputy Prosecutor he might have become an interested and biased participant and "inadvertently stepped from the bench." However, no objection was raised to the Judge's activities. This is admitted by appellants' counsel. We cannot guess or speculate as to the motives of a Judge who interrupts witnesses except to presume that he was only trying to elicit the truth, especially when no abuse of discretion is shown.

Affirmed.

Arterburn, J., concurs. Jackson, J., dissents with opinion. Rakestraw, C. J., and Achor, J., not participating.

## DISSENT

JACKSON, J.—I am unable to agree with the conclusions reached in the majority opinion and dissent thereto.

Appellants were charged by indictment with the crime of conspiring to commit second degree burglary. From a conviction on such charge appellants perfected this appeal.

The indictment, omitting caption, signatures and endorsements thereon reads as follows:

"The Grand Jurors of Lake County, in the State of Indiana, good and lawful men, duly and legally impaneled charged and sworn to inquire into felonies and certain misdemeanors in and for the body of said County of Lake, in the name and by the authority of the State of Indiana, on their oaths present that one JOSEPH GAYNOR, CARMEN APICELLA and CASS CASMIR, of said County, on the 30th day of December, A.D., 1960, at said County and State aforesaid, did then and there unlawfully, knowingly and feloniously unite, combine, conspire, confederate and agree to and with each other, for the object and purpose and with the unlawful and felonious intent to then and there unlawfully, feloniously and burglariously break and enter into a certain building and structure, other than a dwelling house and place of human habitation, to-wit: a certain business building then and there housing the tavern of VASCO CATALDI and VINCENT CATALDI there situate, with intent then and there and thereby to unlawfully feloniously and burglariously steal, take and carry away the personal goods of the said VASCO CATALDI and VINCENT CATALDI, then and there being contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Indiana."

To this indictment, appellants, with their counsel, appeared in open court and jointly and severally waived arraignment, waived trial by jury, and entered a plea of not guilty.

Thereafter each appellant filed his affidavit for change of venue from the Judge. Thereupon a panel was named pursuant to statute, the defendants and the State of Indiana by the Prosecuting Attorney each struck a name from such panel, leaving the name of Honorable Louis C. Holland who was appointed, qualified and assumed jurisdiction in the cause.

Thereafter this cause was submitted to the court for trial without the intervention of a jury. Witnesses for the State were sworn and the State submitted evidence and rested.

After the State had rested, the defendants jointly and severally moved the court for a finding of not guilty. The court overruled defendants' motions. Each appellant then rested. Thereafter, the court found each appellant guilty and sentenced each appellant to the custody and control of the Warden of the Indiana State Prison for a period of not less than two nor more than fourteen years, to which was added a fine in the sum of $25.00 and the costs of the prosecution. The prison sentence of the appellant Casmir was suspended during good behavior and he was placed on probation for a period of three years.

Thereafter the appellants separately and severally, and within time, filed a motion for a new trial. The motion for a new trial contained four (4) grounds, the first of which alleging error of law contained thirteen (13) paragraphs; the second ground was that "[t]he finding of the Court is not sustained by sufficient evidence;" the third ground was that "[t]he finding of the Court is contrary to law;" the fourth ground alleged irregularities in the proceedings of the court and abuse of discretion by the Judge by which the defendants were prevented from having a fair trial in this, "[t]hat the Court did wrongfully abuse his discretion in interfering with the orderly processes of trial in this cause and did interrupt the interrogation of witnesses and actively participated by the asking of questions of witnesses and introducing into evidence on his own motion State's exhibits. . . ."

The Assignment of Errors herein is the single ground that "[t]he Court erred in overruling Appellants' Motion for New Trial."

The evidence most favorable to the appellee may be summarized as follows:

1. Appellants were seen in the vicinity of a business establishment both on foot and in an automobile, and,

2. That certain portions of the doorway to said business establishment showed signs of having been tampered with, and,

3. That one of the appellants was seen leaving the auto occupied by another of the appellants. That such appellant deposited a box under a truck some distance from the business establishment referred to at one hereof, and,

4. That the box so deposited contained firearms and tools, one of which was a screwdriver alleged to have been the tool used in tampering with the doorway in the above mentioned business establishment (a tavern).

In support of the allegations of the indictment, appellee placed into evidence testimony of an FBI expert who was unable to sufficiently establish a connection between the tools examined, being those contained in the above mentioned box, and the tampered with sections of the doorway of the tavern. The witness was unable to provide any connection between fibers of insulation on the coat of one of the appellants and fibers found at the site of the alleged burglary. There was no evidence introduced that proved ownership of any of the tools mentioned at three (3) above in any of the defendants.

A review of the record reveals a total failure on the part of the appellee to even attempt to prove that the appellants combined, conspired, confederated and agreed to and with each other to break and enter into the tavern of Cataldis, etc., as charged in the indictment. The evidence adduced was an attempt to prove a burglary, not to sustain the averments of the indictment. The charge on which appellants were tried was not the commission of a burglary, but a conspiracy to burglarize. Failure to prove the conspiracy charged requires a reversal of the judgment.

As was said in *Mattingly* v. *State* (1957), 237 Ind. 326, 145 N. E. 2d 650, evidence of a mere relationship or association between the parties does not show a conspiracy. The above cited case further states at page 337,

". . . Testimony from which it might reasonably be inferred that the parties charged in the affidavit had an agreement or a common plan or purpose, to break into and enter *some* place other than that charged in the affidavit is not,

in itself, sufficient to sustain the conviction herein. *Kelley* v. *State* (1936), 210 Ind. 380, 385, 3 N. E. 2d 65."

In the case at bar there is total failure to prove any agreement or common plan entered into by the appellants.

"In order to be a conspiracy there must be an intelligent and deliberate agreement to commit the offense charged. It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to do the acts and commit the offense, though the agreement is not manifest by any formal words. Concurrence of sentiment and co-operative conduct in the unlawful and criminal enterprise are the essential ingredients of criminal conspiracy. There must be an agreement and there must be evidence to prove the agreement directly, or such a state of facts that an agreement may be legally inferred. Conspiracies cannot be established by the mere suspicion. Evidence of mere relationship or association between the parties does not show a conspiracy." *Coughlin* v. *State* (1950), 228 Ind. 393, 395, 92 N. E. 2d 718; *Mattingly* v. *State* (1957), 237 Ind. 326, 145 N. E. 2d 650; *Robertson* v. *State* (1952), 231 Ind. 368, 370, 108 N. E. 2d 711.

I am in agreement with the Robertson proposition and definition, and am of the opinion that an examination of the record in the case at bar requires us to reach the same conclusion reached by the court in *Mattingly* v. *State, supra,* at page 340 reading as follows:

"The most that can be said of the evidence in this record is that it establishes a relationship and association between appellant and the others charged, and tends to establish a suspicion of guilt. This is not enough to sustain a conviction. *Robertson* v. *State, supra* (1952), 231 Ind. 368, 376, 108 N. E. 2d 711."

The language in *Hutcheson* v. *State* (1963), 244 Ind. 345, 355, 192 N. E. 2d 748, is, I feel, peculiarly pertinent to the issues presented in the case at bar.

"In the case at bar the mosiacs which appellee contends weave a web of guilt around the defendant require the building of inferences upon inferences, and are therefore in our judgment insufficient. The record is simply devoid of facts and circumstances from which inferences can properly be drawn to establish that appellant entered into a conspiracy to bribe Doggett. As we have heretofore stated,

482

evidence which at the most tends to establish a suspicion of guilt is not sufficient to sustain a conviction."

I therefore conclude the judgment in this case is not sustained by sufficient evidence, the cause should be reversed and remanded to the trial court with instructions to sustain appellants' motion for a new trial.

NOTE.—Reported in 217 N. E. 2d 156.