**Luis C. FRIAS, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 49S00–8803–CR–00341.

Supreme Court of Indiana.

Dec. 11, 1989.

John B. Wilson, Jr., Nashville, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On September 22, 1987, following a jury trial in the Marion Superior Court Criminal Division, Defendant–Appellant Luis C. Frias was convicted of Conspiracy to Commit Dealing in Cocaine and Dealing in Cocaine. He received a sentence of thirty (30) years for each conviction, said sentences to be served concurrently.

Frias raises three issues in this direct appeal:

1. error of the trial court in giving an instruction on conspiracy;

2. denial of Frias' motion for independent chemical analysis; and

3. sufficiency of the evidence.

The facts most favorable to the judgment of the trial court show that in June, 1984, Blaine Sechrest and Stanley DeKemper were drug addicts. Sechrest had been an active cocaine user for two to three years. One of his cocaine suppliers was Stanley DeKemper. DeKemper had been a drug addict from 1979 to June, 1984. He supported his habit by selling cocaine. One of DeKemper's cocaine suppliers was Luis C. Frias.

From about February, 1984, to June, 1984, Indianapolis Police Officer John Larkins had been conducting a cocaine investigation that involved Sechrest. Indianapolis Police Officer Tommy Terrell, an investigator in the narcotics division, assisted Officer Larkins. Officer Larkins learned that Sechrest obtained his cocaine from DeKemper.

On June 24, 1984, Officer Larkins confronted Sechrest about the matter. He persuaded Sechrest to cooperate with the investigation and provide evidence against DeKemper.

On June 27, 1984, at 2:30 p.m., Officers Larkins and Terrell met Sechrest at the Indianapolis Police Department to arrange a purchase of cocaine from DeKemper. Sechrest twice telephoned DeKemper from the police station and allowed police officers to tape record his conversations. At 3:00 p.m. Sechrest telephoned DeKemper at his residence. Sechrest asked DeKemper if he would sell cocaine to him that day. DeKemper agreed to sell Sechrest one eighth (⅛) ounce of cocaine for two hundred fifty dollars ($250). At 3:20 p.m. Sechrest again telephoned DeKemper to arrange for a time to pick up the cocaine. DeKemper agreed to meet Sechrest at 9:00 p.m.

At 8:00 p.m., the police officers began preparing Sechrest for his rendezvous with DeKemper. Police officers outfitted Sechrest with a "Kel" portable transmitter. Officer Terrell provided Sechrest with two hundred fifty dollars ($250). Police officers photocopied the money and recorded the serial numbers before they gave the money to Sechrest. They searched Sechrest and his automobile. Sechrest testified he was not searched. Then police officers instructed Sechrest to drive to DeKemper's home and purchase the cocaine.

Sechrest drove his car to DeKemper's residence. Officers Larkins and Terrell followed him in a police car. DeKemper got into Sechrest's car a few minutes after

Sechrest arrived. Sechrest gave the two hundred fifty dollars ($250) to DeKemper. DeKemper indicated that they needed to meet his cocaine source. DeKemper said, "Let's go to 49th and College."

Officers Terrell and Larkins followed Sechrest's car to 49th and College and monitored the conversation between Sechrest and DeKemper. Officer Larkins overheard "49th and College" several times and advised other police officers to go to that location. DeKemper got out of Sechrest's car upon arrival at 49th and College and walked over to a dark Camaro parked in front of a telephone booth. He got into the passenger's side of the Camaro.

Officers Larkins and Terrell arrived on the scene about two minutes after DeKemper got into the Camaro. Officer Terrell instructed police officers to arrest the occupants of the Camaro. Police officers arrested Frias and DeKemper; Frias was arrested on the driver's side and DeKemper was arrested on the passenger's side of the Camaro.

Police officers searched DeKemper, Frias and the Camaro. They found a plastic bag under the passenger's seat where DeKemper had been sitting that contained a white powder. Police officers found nine hundred thirty dollars ($930) in Frias' pockets. They also found a small brown vial containing a white powder in Frias' trousers, and a plastic bag containing a white powder in the center console of the Camaro.

Police officers compared the serial numbers of the money recovered from Frias with the serial numbers of the money they provided to Sechrest. Officers found that the serial numbers of two hundred fifty dollars ($250) recovered from Frias matched the serial numbers of the two hundred fifty dollars ($250) they had photocopied and provided to Sechrest.

On July 9, 1984, Frank Palfi, Ph.D., a forensic chemist, analyzed the vial and bags which had been obtained from the subjects in the car. He determined that the vial contained about one third (⅓) gram of cocaine, one of the bags contained one and one half (1.5) grams of cocaine, and the other bag contained four and six tenths (4.6) grams of cocaine.

## I

Frias claims the trial court erred in giving Final Instruction No. 20 which told the jury that proof of a conspiracy may be implied from the conduct of the parties even in the absence of proof of an express agreement.

The crime of conspiracy is defined by the legislature in IC 35–41–5–2 as follows:

(a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. However, a conspiracy to commit murder is a Class A felony.

(b) The state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement.

(c) It is no defense that the person with whom the accused person is alleged to have conspired:

(1) has not been prosecuted;

(2) has not been convicted;

(3) has been acquitted;

(4) has been convicted of a different crime;

(5) cannot be prosecuted for any reason; or

(6) lacked the capacity to commit the crime.

The trial court gave Instruction No. 15 which generally followed IC 35–41–5–2(a), (b). In Instruction No. 18, the trial court followed the statute in (c).

■ Frias' complaint is directed to the trial court's Instruction No. 20 which provided: "An agreement may be implied from the conduct of the parties although they acted separately or by different means and did not come together or enter into an express agreement." It is well established in Indiana that although a conspiracy entails an intelligent and deliberate agreement between the parties, the State is not required to prove the existence of a formal

express agreement. The existence of the agreement may be inferred from the conduct of the parties or proved by circumstantial evidence. *Abner v. State* (1985), Ind., 479 N.E.2d 1254, 1258; *Survance v. State* (1984), Ind., 465 N.E.2d 1076, 1080; *Reese v. State* (1983), Ind., 452 N.E.2d 936, 941. A conviction for conspiracy may rest on circumstantial evidence alone. *Haynes v. State* (1985), Ind., 479 N.E.2d 572, 574.

This Court has, on more than one occasion, quoted with approval the following language from *Brewster v. State* (1917), 186 Ind. 369, 372, 115 N.E. 54, 55:

> It is not necessary to prove that the defendants came together and actually agreed in terms to have the unlawful purpose, and to pursue it by common means. If it be proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another [performing] another part of the same so as to complete it, with a view to the attainment of that same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object.

*See, e.g., Johnson v. State* (1968), 251 Ind. 182, 190, 240 N.E.2d 70, 75; *Steffler v. State* (1952), 230 Ind., 557, 564, 104 N.E.2d 729, 732–33.

In *Robertson v. State* (1952), 231 Ind. 368, 108 N.E.2d 711, a case where this Court reversed a conspiracy conviction for lack of sufficient evidence, we stated that in order to sustain a conviction for conspiracy, there must be an agreement and evidence to prove it. Even in reversing the conviction, however, this Court recognized that there are situations where an agreement can be proven circumstantially: "there must be evidence to prove the agreement directly, or such a state of facts that an agreement may be legally inferred." *Id.* at 370, 108 N.E.2d at 712. Again, in *Gaynor v. State* (1966), 247 Ind. 470, 474, 217 N.E.2d 156, 159: "It has been held that a conspiracy does not need to rest solely on words giving rise to an express agreement, but may be inferred from acts and conduct of the persons accused done in pursuance of an apparent criminal or unlawful purpose in common between them." *See also Weer v. State* (1941), 219 Ind. 217, 37 N.E.2d 537 (although conspiracy cannot be established without an agreement, a physical meeting of the parties for the purpose of forming such an agreement is not essential); *United States v. Holt* (7th Cir. 1939), 108 F.2d 365 (conspiracy frequently established by inferences drawn from acts of person accused), *cert. denied* (1940), 309 U.S. 672, 60 S.Ct. 616, 84 L.Ed. 1018.

■ The problem with the trial court's Instruction No. 20 was that it extracted certain language from cases such as *Brewster, supra,* and *Holt, supra,* but gave a different meaning to that language from the context in which it appeared in those cases. This instruction misinformed the jury in the manner in which they were to weigh the evidence. *Brewster* and *Holt* said it was not necessary for the State to prove a particular instance of a defendant coming together with his co-conspirator and actually agreeing to certain terms of the unlawful plan. This did not mean to say the events did not occur, only that the State did not need to directly prove them. The fact that this occurred could be found by the jury through circumstantial evidence from which it could be inferred that such a meeting and agreement did, in fact, take place. As stated, this Court held in *Robertson:* "there must be evidence to prove the agreement directly, or such a state of facts that an agreement may be legally inferred." *Robertson, supra* at 370, 108 N.E.2d at 712. Instruction No. 20 does not say this. It says an agreement may be implied from the conduct of the parties although they "acted separately or by different means and did not come together or enter into an express agreement." In other words, the instruction could be understood to say that the jury could find there was an agreement even though the evidence showed they never came together and never entered into an express agreement. Although it appears there is circumstantial evidence from which a jury could find there was such an agreement between Frias and DeKemper, it nevertheless required a weighing of all of

the circumstantial evidence for the jury to reach this conclusion. The jury was told it need not do this weighing but could find the agreement existed even though there were no facts presented in evidence from which to imply its existence circumstantially. Since the instruction improperly misled the jury in the manner in which they were to consider this evidence, Frias' conviction of conspiracy must be reversed and a new trial ordered on this issue.

## II

Prior to trial and again during trial, Frias moved for an order granting him permission to have an independent chemical analysis of the cocaine exhibits used by the State at trial. His motion was denied and he now claims such denial was reversible error.

In *Seay v. State* (1988), Ind., 529 N.E.2d 106, the defendant was charged with and convicted of dealing in controlled substances when he sold Dilaudid tablets to an informant and handed a slip of paper containing cocaine to him. A chemist testified the pills contained Dilaudid and the white powder contained cocaine. Because of the limited number of pills, the testing process completely destroyed all of them. Defendant Seay argued on appeal that the trial court erroneously allowed a chemist to testify, contending his due process rights were violated because the State failed to preserve evidence vital to the case. This Court affirmed Seay's conviction, noting that Seay failed to show prejudice because the defense was allowed to use the State's testing reports and probe the veracity of those reports. It was also noted the defendant cross-examined the chemist about the testing procedures used and presented no evidence by expert witness or otherwise challenging the veracity or integrity of the tests and their results. *Id.* at 108. *See also Schwartz v. State* (1978), 177 Ind.App. 258, 265, 379 N.E.2d 480, 486 (defendant made no effort to affirmatively demonstrate that evidence, which he could have produced through an examination of the tablet, would have been material).

In *Everroad v. State* (1982), Ind., 442 N.E.2d 994, defendant requested, but never received, samples of the controlled substances. Finding no error by the trial court in denying defendant's motion to compel discovery, this Court stated:

In the case at bar Appellants made no effort to affirmatively demonstrate that the evidence was material. No evidence was introduced to show that the independent analysis of the controlled substances would have exculpated them, nor did they introduce any expert testimony contradicting the chemical reports submitted by the State. The record shows that the State handed over the results of the laboratory testing to the defense with sufficient time for a defense witness to examine those results prior to trial. There is no error on this issue. *Id.* at 1003.

█ Dr. Palfi testified in the instant case he performed four different tests and gave the results of those tests. Frias was able to cross-examine Dr. Palfi and also had access to the State's laboratory reports. There is no indication that Frias examined these reports nor was any expert testimony offered questioning the accuracy or integrity of the procedures and testing methods. The only reason given by Frias to the trial court for desiring the substance was to determine if Dr. Palfi's findings were "Perhaps maybe incorrect or offbase a little bit."

The trial court has discretion in making decisions regarding discovery matters as part of its inherent power to guide and control the proceedings. *Norris v. State* (1987), Ind., 516 N.E.2d 1068, 1070. Absent a showing of clear error and resulting prejudice to the defendant, the trial court's ruling will not be disturbed on appeal. No such clear error is presented here.

## III

█ Finally, Frias claims there was insufficient evidence to support his conviction for dealing in cocaine and conspiracy to commit dealing in cocaine.

Where sufficiency is challenged, this Court will neither weigh the evidence nor determine the credibility of witnesses. On appeal, we look only to the probative evi-

dence supporting the verdict and the reasonable inferences therefrom to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. The weight and credibility of this evidence or the witnesses sponsoring it are matters to be decided by the jury. *Clifton v. State* (1986), Ind., 499 N.E.2d 256, 257. The facts already recited above indicate sufficient facts and inferences to support the jury's verdicts.

Frias' conviction of conspiracy to commit dealing in cocaine is reversed and a new trial is ordered on this issue.

The trial court is in all other respects affirmed.

SHEPARD, C.J., and GIVAN, J., concur.

DeBRULER, J., concurs and dissents with separate opinion in which DICKSON, J., concurs.

DeBRULER, Justice, concurring and dissenting.

Pursuant to the charge in Count I, conspiracy to commit dealing in cocaine, the prosecution was required to prove that an agreement existed between appellant, DeKemper, and Sechrest. Pursuant to the charge in Count II, dealing in cocaine, the prosecution was required to prove an actual delivery of cocaine to DeKemper in an amount greater than three grams.

Regarding Count I, the jury was instructed:

An agreement may be implied from the conduct of the parties although they acted separately or by different means and did not come together or enter into an express agreement.

This instruction is erroneous because it operates so as to relieve the prosecution of proving an element of the crime of conspiracy, namely, an agreement. There can be no rational implication of an agreement between two persons from their separate conduct toward a common objective where they have not at some point "come togeth-

er," either physically or through an intermediary. For this reason, I too would reverse the conviction for conspiracy.

I would, in addition, reverse the conviction under Count II. Pursuant to the allegation in Count II, the prosecution was bound to prove that appellant delivered to DeKemper cocaine in an amount greater than three grams. The evidence of an actual delivery of this amount of cocaine is that DeKemper entered appellant's car and handed appellant $250. The police then closed in and arrested the two as they sat in the car. A third of a gram was found on appellant's person. One and one-half grams was found in the console of appellant's car, and there were four and six tenths grams under the front seat where DeKemper was sitting. No rational trier of fact could conclude from this evidence to a moral certainty beyond a reasonable doubt that an actual delivery to DeKemper of more than three ounces of cocaine had as yet taken place. While there was ample evidence that appellant possessed cocaine with the intent to deliver it, that offense was not charged. The evidence of guilt on this count was insufficient, and for this reason the conviction under it should be reversed.

DICKSON, J., concurs.