

FILED
Jun 25 2013, 6:06 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**CRAIG PERSINGER**
Marion, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ELNESTO RAY VALLE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 27A02-1209-CR-772 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE GRANT CIRCUIT COURT
The Honorable Mark E. Spitzer, Judge
Cause No. 27C01-1205-FC-86

**June 25, 2013**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

As a result of two misbegotten schemes to bail himself out of jail, Appellant-Defendant Elnesto Ray Valle was charged with and convicted of two counts of Class C felony forgery and one count each of Class D felony attempted theft, Class C felony inmate fraud, and Class A misdemeanor resisting law enforcement. The trial court sentenced Valle to an aggregate term of sixteen years of incarceration. On appeal, Valle argues that Appellee-Plaintiff the State of Indiana presented insufficient evidence to support his conviction for Class C felony inmate fraud, claiming he did not obtain money or property by misrepresenting his ability to re-pay his alleged victim. The evidence shows that Valle obtained a future interest in the bail money as well as his release from prison, both of which, we conclude, constitute property under Indiana Code section 35-31.5-2-253(a). Valle also argues that his sixteen-year aggregate sentence is inappropriate in light of his character and the nature of his crimes. We affirm.

## FACTS AND PROCEDURAL HISTORY

In March of 2012, Valle was incarcerated in the Grant County Jail on a charge of Class D felony possession of marijuana. He shared a jail cell with Edward Jay Brummett, whom Valle considered a friend. On March 22, 2012, Valle placed a jail house telephone call to his acquaintance Damishia Cox and urgently requested that she come to the jail and pick up a $650 check to be released from Brummett's inmate commissary account. Valle instructed Cox to arrive at 9:30 a.m. on March 23, and, after cashing the check, to place $505

into Valle's commissary account so that he could bail[1] himself out of jail. Cox could keep the remaining $145. Valle added that, if asked, Cox should lie and tell jail officials that she was Brummett's cousin. During a second telephone call to Cox on March 22, Valle advised that he would give Cox a wake-up call the following morning.

On March 23, 2012, Valle called Cox at 8:00 a.m. and urged her to come to the jail. Around this time, Valle also presented Jail Officer James Stone with an Inmate Personal Items Release Form, which Valle purported had been completed by Brummett. The form was signed, "Edword [sic] Brummet [sic]," and directed the release of $650 from Brummett's commissary account to Cox. Ex. 1. Cox arrived at the jail before this Release Form was processed, prompting Corporal William Kirkpatrick to contact Officer Stone to see if a form had been completed. Although Officer Stone had received the Release Form from Valle earlier that morning, he had not received an Inmate Grievance Form. In order to release money from an inmate's commissary account, jail policy requires that a Release Form be accompanied by a Grievance Form, explaining the reason for the money's release.

Officer Stone approached Brummett in his jail cell, showed Brummett the Release Form Valle had given him, and asked Brummett why he was releasing the money. Brummett informed Officer Stone that he did not know Cox, had not completed a Release Form, and in no way had authorized Valle to withdraw funds from his commissary account. Later that day, Corporal Kirkpatrick found a second, identical Release Form in his inbox along with a

---

[1] Appellant, Appellee, and the trial court all use the term "bond" to describe the security at issue in this case. We use the term "bail." *See* Ex. 7 (Cash Bail Confirmation Fax).

3

Grievance Form, signed, "Edword [sic] Brummet [sic]." Ex. 3.  The form stated:

> I currently have $739.69 on my account.  My Grandma's car payment is tomorrow[.]  The date of March 23, 2012[,] my cousin Damishia Cox will be here at around 9:30 AM to pick up $650.00 (six hundred and fifty dollars) exact amount[.]  Please do not release any more than the amount given!  I am sending a release of property slip with this grievance so that there are no confusions tomorrow morning.

Ex. 3.  No money was ever released to Cox.

On March 26, 2012, undeterred by his failed attempt to make bail using Brummett's commissary funds, Valle attempted to contact his friend Heather Barrett in hope that she might provide the requisite bail money.  Valle found a telephone number for an individual with the surname "Barrette" in the phone book and, believing this to be Heather's number, placed a call to it on the jail house telephone at 7:36 p.m.  Instead of Heather, however, Valle's call reached Peter Barrett, an individual with no relation to Heather and whom Valle did not know.  Despite having reached the wrong Barrett, Valle engaged Peter in conversation.  Valle confided in Peter that he was in jail and enlisted Peter to call Valle's mother, Nancy, and his fiancée, Kristen, to see if they could bail Valle out of jail.

At 7:56 p.m., Valle called Peter a second time.  Peter reported to Valle that he had spoken with Nancy and that she did not have the money for Valle's bail.  Peter had not attempted to contact Kristen, but he informed Valle that Nancy was going to call her.  During this conversation, Valle told Peter that he was incarcerated for possession of marijuana, and Peter replied that he "got in trouble with that when [he] was in the Navy."  Ex. 13.  This prompted Valle to share that he had been in the National Guard.  Valle and Peter proceeded

4

to discuss veteran's benefits, and, eventually, the conversation veered into Peter volunteering to bail Valle out of jail. Specifically, Peter asked Valle, "[H]ow would you be able to pay this back if somebody got the money up for ya?" Ex. 13. Valle replied that he could "go straight to [his] cousin's house" to get the money, and that "[he would] be able to pay it right back..like within 15 minutes of being released." Ex. 13. Valle went on to say he could "probably" give Peter $800 in return. Ex. 13. Ultimately, Peter decided that he would call Kristin to see if she had the bail money, and if not, he would consider bailing Valle out himself when the bank opened on Monday morning.

Although the two agreed that Valle would call Peter back the following morning, at 8:11 p.m. that night, Valle called Peter a third time. Peter reported that he had been unable to reach Kristin, and Valle advised Peter that he could use a credit card to post Valle's bail. Peter proposed that they wait to see if Nancy would be able to raise the money, but Valle was insistent on being bailed out immediately. Valle again told Peter that he would pay Peter back promptly upon his release. Further, Valle lied and told Peter that his Godfather manages a roofing company, where Valle had worked prior to his arrest. Valle added that he would "have no problem" getting his job back once released. Ex. 14. The conversation ended with Valle giving Peter the phone number to call with his credit card number and Peter giving Valle his address so the two could settle up after Valle's release. Again, Valle told Peter he would pay him $800 in return.

At 8:51 p.m., Valle called Peter a fourth time to check on the status of his bail. Peter informed Valle that he had successfully paid the bail using his credit card and that he had

been charged a $75 service fee. Valle emphasized that he would pay Peter $800 and stated that he would call Peter as soon as he was released. Shortly after Valle's release, Valle called Peter, but at trial, Peter could not recall what was said. Peter never received any money back directly from Valle. The bail money was posted with the Clerk of the Court, where it remained until the Judge ordered it released to Peter as restitution. The $75 service fee was not returned.

On May 9, 2012, the State charged Valle as follows: Counts 1 and 2, Class C felony forgery;[2] Count 3, Class D felony attempted theft;[3] and Count 4, Class C felony inmate fraud.[4] On May 20, 2012, Marion Police Officer Gregg Melton was executing arrest warrants on these charges, when Valle fled into an apartment and locked the door. Officer Melton kicked open the door and pursued Valle to the rear of the apartment, where Valle was apprehended in a room containing five other individuals. On May 21, 2012, the State added Count 5, Class A misdemeanor resisting law enforcement.[5] Valle was tried by a jury and found guilty as charged. The trial court sentenced Valle as follows: eight years executed on Counts 1 and 2, to be served concurrently with three years executed on Count 3; and eight years executed on Count 4, to be served concurrently with one year executed on Count 5. The court went on to find the following aggravating circumstances:

1.     At the age of 25, [Valle] has accumulated a lengthy juvenile and adult history, including numerous probation violations, spanning

---

[2] Ind. Code § 35-43-5-2(b)(2) (2011).
[3] Ind. Code §§ 35-43-4-2(a), 35-31-2-4 (2011).
[4] Ind. Code § 35-43-5-20(b)(1) (2011).
[5] Ind. Code § 35-44-3-3(a)(3) (2011).

6

several jurisdictions, and demonstrating that [he] has been in virtually continuous trouble with the law since age 11.

2.        These offenses were committed while [Valle] was incarcerated awaiting trial or on bond on another offense, to which he recently pled guilty.

3.        [Peter Barrett] was mentally incapacitated, and [Valle] took advantage of such incapacitation in committing [inmate fraud].

Appellant's App. p. 77. The court found no mitigating circumstances. Based upon the "significant aggravating circumstances," the court ordered that the concurrent sentences for Counts 1, 2, and 3 be served consecutively with those for Counts 4 and 5, for an aggregate sentence of sixteen years executed. Appellant's App. p. 69.

**DISCUSSION AND DECISION**

**I. Sufficiency of the Evidence**

Valle argues that the State failed to present sufficient evidence to support his Class C felony inmate fraud conviction.

> "In reviewing the sufficiency of the evidence, we neither re-weigh the evidence nor judge the credibility of the witnesses." *Vance v. State*, 640 N.E.2d 51, 57 (Ind. 1994). "[W]e look only to the probative evidence supporting the verdict and the reasonable inferences therefrom to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt." *Frias v. State*, 547 N.E.2d 809, 813-14 (Ind. 1989). "If there is substantial evidence of probative value to support the conviction it will not be set aside." *Brown v. State*, 677 N.E.2d 517, 519 (Ind. 1997).

*Fields v. State*, 679 N.E.2d 898, 900 (Ind. 1997) (brackets in original).

Indiana Code section 35-43-5-20 provides:

(b) An inmate who, with the intent of obtaining money or other property from a person who is not an inmate, knowingly or intentionally:
    (1) makes a misrepresentation to a person who is not an inmate and obtains

7

> or attempts to obtain money or other property from the person who is not an inmate;
>
> …
>
> commits inmate fraud, a Class C felony.

Valle concedes that the evidence sufficiently supports the conclusion that he made misrepresentations to Peter about his prospective employment and ability to repay Peter. Valle claims, however, that he did not obtain money or property from these misrepresentations.

At trial, the State argued that Valle obtained the bail money posted by Peter because, in order to complete the bail transaction, Peter agreed to the following provision:

> The cardholder acknowledges that he/she relinquishes any claim to these funds and understands and agrees that *these funds will become the property of the defendant*. Furthermore, the cardholder understands that upon disposition of the charges/cases against the defendant, *any funds ordered returned by the court will be returned to the defendant* and not the cardholder.

Ex. 7 (emphasis added). Valle contends that this evidence is insufficient to prove that he obtained money or property because he never possessed the bail money; it remained with the County Clerk throughout trial and was returned to Peter at sentencing. We rephrase this issue as whether Valle's future interest in the bail money constitutes property for the purposes of inmate fraud. We conclude that it does.

The Indiana Criminal Code defines "property" as "anything of value," including: "(1) a gain or advantage or anything that might reasonably be regarded as such by the beneficiary" and "(10) contract rights, choses-in-action, and other interests in or claims to wealth[.]" Ind. Code § 35-31.5-2-253(a). That the bail money, less the $75 service fee, was ultimately

8

ordered returned to Peter is of no matter. Had Valle's plan not been thwarted, he would have been entitled to the bail money if returned by the court.

The State also argued at trial that Valle obtained property in the form of his release from jail. We agree. In addition to any "gain or advantage," Indiana Code section 35-31.5-2-253(a) includes "(3) intangibles" in its definition of "property." Valle's claim that his release was somehow incidental to the cash bail is untenable. The relevant code provisions above do not differentiate between direct and indirect benefits, and, by definition, an inmate's release is the intended and direct result of bail. BLACK'S LAW DICTIONARY 150 (8th ed. 2004) (defining "bail" as "[a] security such as cash or a bond … required by a court for the release of a prisoner who must appear in court at a future time."); *id.* (defining "cash bail" as "[a] sum of money (rather than a surety bond) posted to secure a prisoner's release from jail."). The evidence was sufficient to support Valle's conviction for inmate fraud.

## II. Appropriateness of the Sentence

Valle also argues that his sixteen-year aggregate sentence is inappropriate in light of his character and the nature of the offense. We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App.

9

2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

With regard to the character of the offender, Valle concedes that he has an "extensive and serious" criminal record, "especially for a 25 year old man." Appellant's Br. p. 10. Notwithstanding his significant juvenile history, Valle has been convicted of six prior felonies and eight misdemeanors and has committed eight probation violations. "This history reflects an individual who has been given numerous opportunities to reform his criminal behavior" and "shown no inclination or willingness to change." Appellant's Br. 10. In fact, as the trial court found, Valle committed the present offenses while he was either incarcerated awaiting trial or on bail for an additional felony offense, to which he has since pled guilty.

With regard to the nature of the offenses, Valle claims that his sixteen-year aggregate sentence is inappropriate because no threats were made and no one was injured in their commission. His crimes, however, were aggravating in other ways. In committing forgery, Valle victimized his cellmate Brummett, whom Valle considered a friend. In committing attempted theft, Valle involved his acquaintance Cox, an individual with no criminal history

and whom Valle asked to lie to jail officials. In committing inmate fraud, Valle took advantage of Peter, an individual the trial court determined to be "mentally incapacitated." Appellant's App. p. 77. And in resisting law enforcement by fleeing into an apartment, Valle endangered the five other individuals in the apartment. Valle further claims that his sentence is inappropriate because the pecuniary loss resulting from his crimes was only $75. But, had Valle's plans not been thwarted, an additional $505 would have been lost. Moreover, Peter, a recipient of disability benefits, was without $505 for five months during the pendency of Valle's trial.

The judgment of the trial court is affirmed.

BROWN, J., concurs.

RILEY, J., concurs in part and dissents in part.