# KREIG *v.* STATE OF INDIANA.

[No. 25,873.   Filed May 3, 1934.]

*Robert F. Reeves, Ralph E. Jones,* and *Merle N. A. Walker,* for appellant.

*James M. Ogden,* Attorney-General, and *V. Ed. Funk,* Deputy Attorney-General, for the State.

FANSLER, J.—Appellant was charged by indictment and convicted of conspiracy to commit a felony. He assigns as error the overruling of his motion to quash the indictment.

The indictment covers more than eleven printed pages, and hence we will not set it out in full. It alleges in substance that appellant and another unlawfully combined and conspired to unlawfully and feloniously represent and pretend to divers citizens of Hancock County, many of whose names are unknown to the grand jurors, for the purpose of obtaining their signatures to divers numbers of written instruments, contracts, notes, and checks, many of which have not been seen and are not in the possession of the grand jurors, and for the purpose of cheating and defrauding the public generally, and for the purpose of procuring and obtaining the signatures of divers citizens of Hancock County to divers written instruments, and for the purpose of obtaining cash, money, and things of value from divers citizens of Hancock County, and from the public generally, did then and there falsely represent and pretend: that appellant had a contract with the Indiana Electric Corporation to supply him with current for a line to be constructed in Hancock County; that he had a contract for current with the company which supplied the town of Carthage; that he had a franchise from the Public Service Commission to construct an electric line upon public highways of the county, and that no other person could obtain a franchise; that he

had a contract with the Union Traction Company of Indiana for electric power; that he had a contract with the company which furnished power to the town of Kennard, Indiana; that he was part owner and held stock in the company which supplied electrical current to the town of Kennard; that the Rural Power & Light Company was the same company which supplied electrical current to the town of Kennard; that he had a contract for power with a Kentucky company; that he had a contract for power with a company whose plant was located in Terre Haute; that the Rural Power & Light Company already had a power line constructed from the city of Terre Haute to the town of Kennard; that appellant was manager of the Rural Power & Light Company, a corporation organized under the laws of the State of Kentucky; that he had a contract with the city of Greenfield for electrical current; that he owned an electric cable from the city of Terre Haute to the town of Kennard; that he had a written contract or written authority from the Public Service Commission which provided that if he failed to complete the construction of the proposed electric line, the same would be constructed without additional expense by the Public Service Commission; that he had written plans and specifications which had been prepared, authorized, and signed by a member of the Public Service Commission; that he was financially able to build and construct an electric line to the homes and residences of divers citizens of the county, and to carry out his contracts; that he owned the electric power to be used in the construction of an electric line upon divers highways, and had sufficient money and cash to construct numerous electric lines in the county to connect and unite with other electric lines which he then and there owned and which were charged with electrical current which he then and there owned; that in truth and in fact the

representations were all false and were made for the purpose of inducing the people generally to issue and execute divers contracts, notes, and checks; and that divers citizens of the county, relying upon the representations of appellant, and believing the same to be true, were led and induced to execute certain written instruments, contracts, notes, and checks, and to pay out cash and things of value, and appellant did thus receive and obtain divers written instruments, contracts, notes and checks from divers citizens of the county, to their injury, contrary to the form of the statutes.

An indictment for conspiracy to commit a felony must describe the intended felony with the same certainty and particularity as an indictment for committing such felony. *Landis* v. *State* (1925), 196 Ind. 699, 149 N. E. 438; *Genett* v. *State* (1925), 197 Ind. 105, 149 N. E. 894; Ewbank's Criminal Law, 2d Ed., §1583.

An indictment for procuring the execution of a written instrument by false pretense must set out a copy of the instrument. *Bonnell* v. *State* (1878), 64 Ind. 498; *Johnson* v. *State* (1881), 75 Ind. 553; *State* v. *Styner* (1899), 154 Ind. 131, 56 N. E. 98.

An indictment must allege the ownership of the property fraudulently procured or explain the absence of such averment. *Green* v. *State* (1901), 157 Ind. 101, 60 N. E. 941.

In *Johnson* v. *State, supra,* it is held that an indictment charging the obtaining of property under false pretense, must specify the pretense, and the goods obtained, and from whom obtained.

The names of the persons against whom the conspiracy was directed are not set out in the indictment, although not all of their names were unknown to the jurors. Appellee cites three Indiana cases which it is

claimed sustain the contention that this is not fatal to the indictment.

In the first case cited, *McKee* v. *State* (1887), 111 Ind. 378, 12 N. E. 510, it is said:

"Undoubtedly, if the nature of the conspiracy is such as to define the particular persons against whom it is directed, or if from the commission of overt acts the conspirators have actually accomplished their fraudulent purpose, so that the names of the victims are ascertainable by the pleader, the better method would be to allege the names of those actually defrauded. The necessities of the case may often, however, require that the general form of pleading adopted in the indictment before us should be sustained. The indictment was not bad for the reasons urged against it."

The indictment there under consideration did not charge a completed felony, but only the formation of a conspiracy to commit a felony and hence, it might have been impossible to name specific persons against whom the conspiracy was directed.

In *Williams* v. *State* (1918), 188 Ind. 283, 123 N. E. 209, the next case cited by appellee, it is said:

"In *McKee* v. *State* (1887), 111 Ind. 378, 12 N. E. 510, it is said: 'The authorities abundantly settle the proposition that an indictment is not objectionable which charges that the object of the conspiracy is to defraud many persons, not capable of being resolved into individuals, or the public generally, instead of certain named individuals. 2 Bishop Crim. Law, section 209; 2 Wharton Crim. Law, section 1396.' It does not necessarily follow, from the fact that money was actually paid, that the grand jurors knew the names of the persons contributing the same, or that the evidence before them on that subject was satisfactory. In such cases the general form of pleading has been recognized and sustained. *McKee* v. *State, supra."*

In the other case cited, *Miller* v. *State* (1922), 193 Ind. 216, 139 N. E. 306, the indictment alleges a sale of liquor "to persons to this affiant unknown."

These cases can only be construed as holding that, where the felony is not charged to have been completed, and the conspiracy was intended to operate upon no particular person, but upon any person who could be made a victim, or in other cases where it is apparent that the names of those whom it was intended to defraud may not be known, or cannot be known, to the grand jury, the names of those intended to be defrauded may be omitted. The cases cannot be construed as holding, nor are we willing to go so far as to hold, that where the names of the persons defrauded, or intended to be defrauded, or any of them, are known to the grand jury, as in this case, they need not be set out. We can conceive of no case in which the names being unknown to the grand jurors, that fact might not be alleged and thus the indictment or affidavit made good.

Appellee says in its brief:

"It is not necessary to the sufficiency of an indictment charging a conspiracy to commit a felony by false representations for obtaining 'divers written instruments, contracts, notes and checks, many of which have not been seen and are not in possession of the Grand Jury,' that the written instruments, etc., should be described by setting out their substance, where the reason for not so describing such instruments, etc., is alleged for the failure to do so. *Bonnell* v. *State,* 64 Ind. 498."

But the indictment, by way of recital, says that many of the written instruments, contracts, notes, and checks have not been seen or are not in possession of the grand jurors, from which we are bound to infer that some of them were seen and had been in possession of the grand jurors. No excuse or reason for not describing the instruments which were seen and in possession of the grand jury is suggested.

The allegation that appellant fraudulently represented himself as financially able to carry out his con-

tracts is not specific and must be treated as a matter of opinion. To be available, the false representation must be of an existing fact. A representation that the defendant is the present owner of specific property is a representation of fact, but the mere representation that he is at present solvent, may be a matter of opinion, and hence an allegation that the defendant fraudulently represented himself as solvent or financially able to carry out his contracts, standing alone, is not sufficient to charge an offense under the statute, and the following decisions of this court should be reconciled upon the theory: *State* v. *Magee* (1858), 11 Ind. 154; *Todd* v. *State* (1869), 31 Ind. 514; *Casily* v. *State* (1869), 32 Ind. 62; *Leobold* v. *State* (1870), 33 Ind. 484; *Clifford* v. *State* (1877), 56 Ind. 245; *State* v. *Timmons* (1877), 58 Ind. 98; *State* v. *Snyder* (1879), 66 Ind. 203; *Miller* v. *State* (1880), 73 Ind. 88.

There was evidence that the appellant made many of the representations charged in the indictment, but no evidence that tends to show that such representations were false except in the case of two. E. J. Kowalke, employed as a rate statistician by the Indiana Electric Corporation, testified that appellant wanted to contract for power with that company and was advised that he would have to build according to their standards, and was referred to Mr. Johnson; that he knew of no contract between appellent and that company. L. B. Johnson testified that he was employed by the Indiana Electric Corporation; that he had nothing to do with making contracts; that he had a conversation with appellant; that appellant had intended to build a line from Carthage to New Palestine; that the Indiana Electric Corporation refused to make a contract with appellant. William A. Edwards testified that he was employed by the Indianapolis Power &

Light Company, and was formerly employed as director of service with the Public Service Commission of Indiana; that he had access to the records of the Commission and was familiar with its rules; that in 1928 the Board adopted a rule requiring permission to build electric lines; that he had several talks with appellant about a line from Philadelphia to near Carthage; that the larger companies would not serve farmers, and that the Commission encouraged farm lines; that he did not know whether the Commission ever signed specifications for appellant's line; that he had no knowledge of the Public Service Commission agreeing to finish any line started by appellant. Fred I. King, Secretary of the Public Service Commission, testified that the records from March, 1927, to February, 1929, showed no order authorizing appellant to construct an electric line in Hancock County, but that the Commission did not require an authorization until February, 1928; that he found no record of an agreement by the Public Service Commission to complete appellant's line in the event he failed to complete it, and no record that a franchise had been granted to appellant.

The above is evidence, although not conclusive evidence, that appellant's claim that he had a contract for power with the Indiana Electric Corporation was false and fraudulent, and that his claim that he had a franchise from the Public Service Commission, and that the Commission would complete his line if he did not complete it, were false and fraudulent. The facts established might be sufficient to sustain a conviction of appellant upon a charge of obtaining property by false pretense, upon a proper affidavit or indictment charging that offense against some one of the witnesses who testified that he procured property from them. But he is not charged here with obtaining property by false

pretense. He is charged with conspiracy to commit a felony.

There is, however, no evidence whatever that Walker, who is charged to have been appellant's coconspirator, had any knowledge at all that these representations were false, if they were, in fact, false. There is no direct evidence of a conspiracy between appellant and Walker, and the mere fact that Walker worked for or with appellant in getting contracts in the name of appellant, or the Rural Power & Light Company, is not sufficient to justify a verdict that there was a conspiracy, in the absence of some evidence that some representation which was false was known to Walker to be false. It is true that such evidence may be circumstantial, but there must be evidence, and we find none in the record.

One of the witnesses for the State testified that he saw a blue print upon which was signed a name which he recognized as that of a member of the Public Service Commission. There was evidence that appellant had negotiated with the Indiana Electric Corporation for a contract to furnish power for his proposed line. There is no evidence of any representation that appellant's alleged coconspirator, Walker, had any franchises or contracts in his name, or that there was any representation that he personally proposed to build, or had built, or proposed to finance, or had financed, any power line. It is not unreasonable to believe from the evidence that Walker acted in perfect good faith in the transaction, believing, as the alleged victims did, that appellant had the contracts, franchises, and other things that he claimed. At least there is no direct evidence nor substantial circumstance which would support a reasonable belief that he knew the representations referred to to be false and, yet, deliberately and intentionally used them for the purpose of defrauding. A

verdict of guilty as to Walker clearly could not stand under the evidence here and hence, we must hold that there is not sufficient evidence to sustain the vital allegation that there was a conspiracy.

The facts in evidence might be sufficient to sustain a conviction of the appellant upon a charge of obtaining money, or such other valuable things as were referred to in the testimony, from various of the individuals who testified, if appellant were indicted for such an offense. Upon this subject we express no opinion. The charge here is not obtaining money or other property under false pretense. It is a charge of conspiring to accomplish that purpose. Whether the purpose was accomplished or not is immaterial if, in fact, there was a conspiracy to accomplish that purpose by the means of false pretense. But, as we have pointed out, there is no evidence of a conspiracy, and, therefore, the verdict and judgment finding appellant guilty of conspiracy to commit a felony cannot stand.

The bill of exceptions containing the evidence follows the clerk's certificate in the record. The clerk certifies

"that the above and foregoing transcript contains full, true, correct and complete copies of all the papers filed and entries made in said cause in my office as such Clerk and recorded in the records of said office as required by the above and foregoing praecipe, except the General Bill of Exception containing the evidence filed in this case, which instead of being copied into the record as a part of said transcript is embodied therein as originally filed." This certificate sufficiently identifies the bill of exceptions, signed by the judge and marked filed by the clerk, which immediately follows it. The appellee contends, upon authority of the cases of *DeHart* v. *Board, etc.* (1895), 143 Ind. 363, 41 N. E. 825; *Johnson, Admr.* v. *Johnson* (1900), 156 Ind. 592, 60 N. E. 451 and *Rowan* v. *State* (1915), 184 Ind. 399, 111 N. E.

431, that the bill of exceptions must precede the clerk's certificate, and that otherwise it is not properly in the record. In the cases referred to, the clerk's certificate was general and did not name the bill of exceptions as being in the record, and it was therefore treated as attached to the record and not a part of it. The situation here is different. The certificate of the clerk expressly includes the bill of exceptions as part of the record.

Judgment is reversed, with instructions to sustain appellant's motion to quash the indictment.