## ROBERTSON *v.* STATE OF INDIANA

[No. 28,830.   Filed November 26, 1952.]

*Mellen & Mellen,* of Bedford, for appellant.

*J. Emmett McManamon,* Attorney General; *William T. McClain* and *John Ready O'Connor,* Deputy Attorneys General, for appellee.

BOBBITT, J.—Appellant was charged by affidavit under the Acts of 1905, ch. 169, §641, p. 584, §10-1101, Burns' 1942 Replacement, with conspiracy to commit a felony, was tried separately by jury, found guilty as charged, and fined in the sum of $400 and sentenced to the Indiana State Prison for not less than two, nor more than fourteen years.

Although ninety-eight causes for a new trial are specified, we need consider only whether the evidence is sufficient to sustain the verdict of the jury.

The affidavit upon which appellant was tried and convicted, omitting formal parts, is as follows:

"Harold R. Dyer who being duly sworn, upon oath says that HOMER L. ROBERTSON, HAROLD ARTHUR, KELSO BOWERS, JR., LARRY THOMPSON, ROBERT McAULEY, AND EACH OF THEM late of said County and State, on or about the 16th day of March, 1951 at and in the County aforesaid, did then and there unlawfully, knowingly and feloniously, unite, combine, conspire, confederate and agree to and with each other for the object and purpose, and with the unlawful and felonious intent then and there and thereby to feloniously take, steal and carry away one (1) safe of the personal goods and chattels of another, to-wit: Harold R. Dyer, this affiant, and Roy Humphrey, and the contents of said safe, said safe and contents being then and there of the value of Twelve Hundred Dollars ($1200.00), contrary to the form of the statute in such cases made and provided, and

against the peace and dignity of the State of Indiana."

Appellant was granted a separate trial and the state elected to try him first. It appears that appellant was tried on the theory that he and Harold Arthur and Kelso Bowers, Jr. were the conspirators, as it was not contended during the trial that the other defendants, Larry Thompson and Robert McAuley, were parties to the conspiracy. We have, therefore, considered the questions here presented in light of that fact.

This court, in *Coughlin* v. *State* (1950), 228 Ind. 393, 395, 92 N. E. 2d 718, laid down the essentials necessary to constitute a conspiracy under §10-1101, *supra,* as follows:

"In order to be a conspiracy there must be an intelligent and deliberate agreement to commit the offense charged. It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to do the acts and commit the offense, though the agreement is not manifest by any formal words. Concurrence of sentiment and co-operative conduct in the unlawful and criminal enterprise are the essential ingredients of criminal conspiracy. There must be an agreement and there must be evidence to prove the agreement directly, or such a state of facts that an agreement may be legally inferred. Conspiracies cannot be established by a mere suspicion. Evidence of mere relationship or association between the parties does not show a conspiracy."

The existence of the agreement need not be proved directly but may be inferred from other facts proved. If one concurs in a conspiracy, no proof of an agreement to concur is necessary to establish his guilt.

*Steffler* v. *State* (1952), 230 Ind. 557, 104 N. E. 2d 729.

The statute defining conspiracy to commit a felony[1] creates two separate offenses: (1) Uniting or combining with any other person or persons for the purpose of committing a felony; and, (2) knowingly uniting with any other person or persons, body, association or combination of persons whose object is the commission of a felony or felonies. *State* v. *McKinstry* (1875), 50 Ind. 465; Ewbank's Ind. Criminal Law, 2d ed., §1651, p. 1196.

It is evident that the affidavit in the case at bar attempts to charge the first of these offenses. To sustain a conviction in this case the state was required to prove that appellant knowingly and unlawfully united with one or more of the other persons named in the affidavit for the purpose of stealing and carrying away the personal goods therein described.

An examination of the evidence most favorable to appellee discloses: That there was ample evidence to establish that the safe and the contents thereof as described in the affidavit was stolen and carried away by someone on the night of March 15, 1951, and that it was found at the side of a country road near Maple Grove Church in Monroe County, Indiana, on the morning of March 16, 1951.

Roy Humphreys, one of the owners of the place from which the safe was stolen, testified that he closed the place of business at twelve o'clock on March 15, 1951, and put $1,201.90 in cash in the safe and locked it; that he had known appellant for ten or twelve years; that he had seen appellant in his place of business "one afternoon;" that he didn't recall the date, but it was before March 15, 1951; and that he (appellant) "came in and sat down in a chair for a period of time."

---

[1] Acts of 1905, ch. 169, §641, p. 584, §10-1101, Burns' 1942 Replacement.

Harold R. Dyer, co-owner with Humphreys, testified that when he came to their place of business on the morning of March 16, 1951, the glass was broken in the side door and the safe was gone. He further testified that appellant came into their place of business on "Thursday or Friday the first or second day of March, 1951;" that he entered on the Fourth Street side, slammed the door, "walked half-way up to the front, sat down in a chair, sat there about ten minutes, and got up and walked out." He further testified that to his knowledge appellant had never been in the place before, and when he was there on this one occasion he made no purchase but "watched them play pool, and got up and went out the same door he came in." He further testified that two of the other defendants, Arthur and Bowers, came into the place of business on Tuesday, March 6th, and played four or five games of pool.

There was sufficient evidence to show that appellant owned a Dodge pickup truck; that at about 10:10 p. m. on March 15 the truck was clean, and that about eight o'clock on the morning of March 16, 1951, appellant drove his truck into a filling station in Bloomington to have it washed; that he said to the filling station attendant that he was "in an awful big hurry" and would make it worthwhile if the attendant gave him a quick wash. The evidence further shows that the wheels of the truck at that time were muddy and that appellant was nervous and in a hurry; that he ordered a half pint of whisky while waiting for his car to be washed and told the attendant that he had been up all night drinking. The attendant observed that the bed of the truck contained chips of "cement and straw, a few stones and looked like mud and cinders and every-

thing;" but appellant said he did not want the bed of the truck cleaned.

The evidence was sufficient to establish that the particles taken from the bed of the truck at the time of appellant's arrest on March 23, 1951 came from the insulation on the stolen safe or from one having the same identical type of insulation; that the bed of the truck, when examined by police after appellant's arrest, showed two marks running lengthwise of the bed of the truck approximately seventeen inches apart and approximately one inch wide, and the inside of the tail gate of the truck showed the same marks and the distance between the wheels on the safe measured approximately seventeen inches, and that tire marks near the place where the safe was found were made by Goodyear tires, and that appellant's truck was equipped with Goodyear tires.

The chief of detectives of Bloomington testified that in a conversation with appellant on Saturday morning after his arrest, in the presence of a state police detective, appellant said that he was in town on the night of March 15, 1951 until ten-thirty or eleven o'clock and then returned home; that he got up early the next morning and took his truck downtown to get it washed; that he had never hauled a safe in his truck, or loaned his truck to anyone to haul a safe, had never been hired by anyone to haul a safe in his truck, and that he had never permitted any other person to drive it except his wife. This witness also testified that the streets between appellant's home and the public square in Bloomington were paved and that he saw appellant's truck parked in front of Henthorne's Cafe between nine and nine-thirty a. m. on March 16, and that the truck was clean at that time.

William F. Murphy, a detective of police in Bloomington, testified that he had known appellant twenty or twenty-five years, and defendants, Arthur and Bowers, for about five years; that he had seen appellant and Arthur and Bowers together at "the levee" in Bloomington; that he had not seen the three together "too frequently until about two months ago" (the trial was had April 21-23, 1951; the alleged theft occurred on the night of March 15, 1951) and since that time had seen them on different occasions "standing around on the levee or in Mr. Robertson's (appellant's) truck," and that he had seen them together a few days before March 16, 1951 but couldn't recall any specific time or date.

George E. Vandenburg, a detective on the Bloomington police force, testified that he had seen the defendants, Arthur and Bowers, together several times within the last six months and approximately every day during the last month; that for a period of six months prior to March 16, 1951 he had seen appellant and Arthur and Bowers several times sitting in front of Henthorne's Cafe "in and around Mr. Robertson's truck."

Carl Sylvester testified that he was employed at Henthorne's Cafe and had been continuously for the past five years; that he knew appellant and Arthur and Bowers, and that within the last six months he had seen the three of them together most every day "just loafing around or maybe drinking;" that he saw appellant with Arthur and Bowers at the Tourner Hotel in Bloomington on Sunday evening, March 18, 1951, and that he went with the three of them in appellant's truck to appellant's home where they played poker, and appellant, Arthur and Bowers probably had fifty dollars each at the start of the game.

Joseph Jacobs testified that he had a conversation on March 2, 1951 with the two alleged conspirators, (defendants) Arthur and Bowers, in Tandy's Cafe in Bloomington in which Arthur asked him if he had a car and he said, "No." Bowers then said he knew where he could get a thousand or two thousand dollars; that it was the place owned and operated by Mr. Dyer at Fourth and College; and that Bowers "said something about the lock" and that "you could just break open the window."

Fred Davis, sheriff of Monroe County, testified that he saw appellant, Arthur, and Bowers in appellant's truck on the south side of the square on Fifth Street in Bloomington "very shortly after March 16, 1951;" and, further, that sometime after appellant's arrest and after he had been released on bond he overheard a conversation in the jail between McAuley and Bowers as follows: McAuley said, "If you bastards would tell the truth I could get out of here" and Bowers replied, "The next time, we will get one that has got some money in it." Davis further testified that at the time appellant was arrested he had $129 in his billfold.

Appellant introduced no evidence in his own behalf.

Analyzing the evidence as summarized above, it appears that there was sufficient evidence of probative value together with certain facts from which the jury might have legally inferred that (1) the safe here involved was stolen from the place of business described in the affidavit by someone on the night of March 15, 1951; and, (2) that the safe had been broken open and $1,201.90 taken from it before it was abandoned on a country road outside of Bloomington; (3) that appellant owned a Dodge truck and that the stolen safe was transported in appellant's truck sometime between

10:10 p. m. on March 15 and eight o'clock a. m. on March 16, 1951, to the place where it was abandoned on the country road outside of Bloomington; (4) that appellant was in the place of business from which the safe was stolen for a few minutes on or about March 2, 1951; (5) that Arthur and Bowers, two of the alleged conspirators, were in the place of business from which the safe was stolen on or about March 6, 1951; (6) that appellant had known Arthur and Bowers for a number of years, and that the three of them were together frequently both before and after March 15, 1951 in taverns other than the one from which the safe was stolen, and on occasions in appellant's truck, and at one time in his home; and (7) that Bowers, one of the alleged conspirators, had some connection with the theft.

There is a distinct lack of evidence to show any "cooperative conduct" between appellant and either Arthur or Bowers to steal the safe described in the affidavit. There is no evidence directly proving an agreement between appellant and Arthur and Bowers, or either of them, to steal the safe in question, nor is the state of facts here presented such that an agreement can be legally inferred.

In our opinion the evidence here establishes nothing more between appellant and Arthur and Bowers than a relationship and association. This is not sufficient to establish a conspiracy. *Coughlin* v. *State* (1950), 228 Ind. 393, 395, 92 N. E. 2d 718, *supra*.

The record before us discloses no evidence of an agreement, manifest or otherwise, between appellant and Arthur and Bowers, or either of them, to commit the crime charged in the affidavit. There is a distinct lack of proof that appellant by his actions, or otherwise, concurred in a conspiracy with Arthur and Bowers, or

either of them, to steal the safe from the place of business at Fourth and College in Bloomington, Indiana.

It seems to us that the most that can be said of the evidence in this record is that it tends to establish a suspicion of guilt. This is not sufficient to sustain a conviction. *Steffler* v. *State* (1952), 230 Ind. 557, 104 N. E. 2d 729, *supra.*

The state has wholly failed to produce any evidence of probative value from which legal inferences could be drawn that appellant ever united or combined with the defendants, Arthur and Bowers, or either of them, for the purpose of committing a felony.

Appellant is charged with conspiracy to commit a felony and under this charge a conspiracy must be proved. *Berry* v. *State* (1930), 202 Ind. 294, 302, 305, 165 N. E. 61, 173 N. E. 705, 72 A. L. R. 1177.

Since there is no evidence of a conspiracy the verdict and judgment cannot stand. *Kreig* v. *State* (1934), 206 Ind. 464, 473, 190 N. E. 181.

The judgment is, therefore, reversed with instructions to sustain appellant's motion for a new trial.

Judgment reversed.

NOTE.—Reported in 108 N. E. 2d 711.