**Andy COBURN, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 2–882 A 287.

Court of Appeals of Indiana, Second District.

April 18, 1984.

Daniel R. Connell, Saginaw, Mich., for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Defendant Andy Coburn (Coburn) appeals his conviction of six counts of theft, I.C. 35–43–4–2 (Burns Code Ed., Supp. 1982).[1] He raises several issues on appeal:

1) whether the evidence is sufficient to support the verdict,

2) whether the trial court erred in excluding evidence of Coburn's offer to repay the complaining witness,

---

1. Under I.C. 35–43–4–2 (Burns Code Ed., Supp. 1982), a "person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a class D felony." A person's control is unauthorized if it is exerted by "creating or confirming a false impression in the other person." I.C. 35–43–4–1(b) (Burns Code Ed., Supp. 1982).

3) whether the trial court erred in denying Coburn's motion for a change of venue from Hamilton County, and

4) whether the trial court erred in concluding the prosecuting attorney's conduct was not prejudicial.

Judgment reversed on four counts and affirmed on two counts.

Mary Guilkey, the complaining witness, first met Coburn in 1979 when he came to her home in Hamilton County to sell insurance. He continued to both visit and call her. In August of 1980 she loaned Coburn $1,600 for medical expenses (Count I). In the fall of 1980 she loaned him $5,000 for bond money (Count II), $2,500 for medical bills (Count III), an additional $2,700 for medical bills (Count IV), a third sum of $2,500 for medical bills (Count V), and $7,800 for a down payment on a house (Count VI). Mary drove to Ft. Wayne to deliver five of the payments and mailed one payment to Coburn in New Mexico. Both Mary and Coburn considered the transactions as loans without a specified due date.

Mary's attorney wrote to Coburn in October of 1980 requesting repayment of the loans. Coburn replied in a telephone conversation with Mary that he would repay the loans if she would ask her attorney to withdraw from the case. Mary's attorney did withdraw, but Coburn did not repay her. Mary called Coburn in November of 1980 and in reply to her request for payment of the loans he said he would "see her in court." Record at 156. Criminal charges against Coburn were filed on February 5, 1981. In May of 1981 Mary met with Coburn's former wife who offered

Mary a check for $22,000.00 for repayment of the loans.

## I. SUFFICIENCY OF THE EVIDENCE

Coburn argues the evidence is insufficient to support the convictions. In reviewing the sufficiency of the evidence, we neither weigh the evidence nor judge the credibility of witnesses. We look only to the evidence and all reasonable inferences which support the finding. If we find substantial evidence of probative value from which the fact finder could conclude guilt beyond a reasonable doubt, then we must affirm. *Resnover v. State,* (1982) Ind., 434 N.E.2d 78.

 Before proceeding to a review of the evidence in this case, we examine the element of unauthorized control by creating a false impression. Theft, so defined, is not unlike the former offense of obtaining money or property under false pretenses (false pretenses) (§ 10–2103, Burns' 1956 Repl.) which generally required a false representation of a past or existing fact.[2] *Beck v. State,* (1958) 238 Ind. 210, 149 N.E.2d 695, *Strong v. State,* (1882) 86 Ind. 208. Thus, a misrepresentation as to future acts or events, or promissory in character, will not support a conviction. *State v. Ferris,* (1909) 171 Ind. 562, 86 N.E. 993. Hence, obtaining a loan solely under a promise to repay although there is an intention to not repay does not constitute an offense; nor does a misrepresentation as to the use to be made of the money. 32 Am.Jur.2d *False Pretenses* § 14 (1982). See *Kreig v. State,* (1934) 206 Ind. 464, 190 N.E. 181. However,

---

**2.** The Offenses Against Property Act, enacted in 1963, (Acts 1963 (Spec.Sess.), ch. 10) repealed the offense of false pretenses but criminalized the same conduct by defining theft, in part, as knowingly obtaining by deception control over property of the owner. (I.C. 35–17–5–3(1)(b) (Burns Code Ed.1975)) However, more conduct was criminalized than under false pretenses because deception was defined as the creation or confirmation of a false impression which could relate to fact, value, law, opinion or intention. (I.C. 35–17–5–13(3) (Burns Code Ed.1975)) Then, the 1976 recodification (Acts of 1976, P.L.

148) of the offense of theft, (I.C. 35–43–4–1, 2 (Burns Code Ed., Repl.1979)) (and subsequent (I.C. 35–43–4–1, 2 (Burns Code Ed., Supp.1983)) amendments) omitted the provision that the false impression could relate to fact, value, law, opinion or intention. Therefore, following our mandate to strictly construe a criminal statute in favor of a defendant, we conclude the deletion of the extended false impression provision is a retreat to the law of false pretenses; *i.e.,* the misrepresentation must be of present or past fact.

"where a loan of money is obtained by means of a false statement concerning an existing or past fact, the fact that such statement is coupled with a false statement concerning the use that the borrower intends to make of the money does not prevent a conviction for obtaining money by false pretenses."

32 Am.Jur.2d *False Pretenses* § 14 (1982) (footnote omitted). *See Crum v. State*, (1897) 148 Ind. 401, 47 N.E. 833; *Perkins v. State*, (1879) 65 Ind. 317. Thus,

"the gravamen of the offense is in the making of the false pretense with intent to defraud and thereby obtaining another's property. So it is not essential that the victim suffer a permanent loss or sustain a pecuniary loss. The offense is complete when money or property has been obtained by false representations and cannot be purged by subsequent restoration as repayment ... the actual repayment of a loan obtained by false pretenses [will not] constitute a defense against a criminal prosecution for obtaining money by false pretenses."

32 Am.Jur.2d *False Pretenses* § 38 (1982) (footnotes omitted).

■ Accordingly, there is no merit to Coburn's argument the State failed to prove he had the intent to deprive Mary of her money because Coburn and Mary testified the money transfers were loans.[3] Whether the money transfers were loans is not the issue. Similarly, whether or not Coburn intended to repay the loans at some future date is not in issue. Rather, the issue is with what intent and purpose did Coburn make the false statements. Nevertheless, we conclude the evidence is insufficient on three counts to permit a reasonable fact finder to find beyond a reasonable doubt that Coburn obtained a loan of Mary's money by creating the false impression he had very large medical bills. The evidence is also insufficient with respect to a fourth count that he obtained a loan from Mary by creating the false impression he needed it for a down payment on a house in Arizona they would buy together. There is, however, sufficient evidence with respect to a fifth and sixth count that he obtained a loan from Mary by creating the false impression he was at Mayo Clinic and needed money to go to a Texas clinic, and he was in jail and needed bond money.

The criminality of the representations in Counts I and III is not in issue because there is no evidence the representations were false. With reference to Count I, Mary testified Coburn told her "he was going to the doctor" and "wanted to know if I would loan him .... Sixteen Hundred Dollars...." Record at 114. The record reveals no misrepresentation on Coburn's part; rather, he said he was going to the doctor and the undisputed evidence is he was going to the doctor.

With reference to Count III Mary testified Coburn told her he was sick, was going back to the doctor and going to Bluffton Clinic, and asked her for twenty-five hundred dollars. Record at 129, 132. Again, the record reveals no misrepresentation on Coburn's part because the evidence is uncontradicted that he was ill and was going to a clinic in Bluffton. Record at 218, 281.

With reference to Count IV, Mary testified Coburn wanted twenty-seven hundred dollars to go to the Mayo Clinic "for his sickness." Record at 136. Though the record reveals Coburn did not *in fact* go to the Mayo Clinic, his representation as to an intended use of the money does not constitute a representation as to past or present fact and thus, the evidence is insufficient Coburn was trying to create a false impression in Mary's mind.

With reference to Count VI, Mary testified Coburn said "Why not go with me [to Arizona] and we'll buy a house." Record at 149. She said she gave him seventy-eight hundred dollars "to make a down payment on a house in Arizona." Record at 149. This is insufficient evidence to

---

**3.** Coburn argues inappropriately that the State failed to prove he had the intent to *permanently* deprive Mary of her property. The requirement of an intent to permanently deprive was deleted from the statute by a 1971 amendment.

sustain the conviction. Although there is no evidence Coburn actually used the money to make a down payment, the representation again is not of past or present fact.

There is sufficient evidence to sustain the conviction for Count II, *i.e.*, the amount Coburn borrowed to pay a jail bond. Mary testified Coburn "said he was in jail and he asked if I would go get the bond...." Record at 120. The call in fact originated from a motel. Record at 234. This fact, coupled with evidence Coburn had not been held in a jail in Allen or any surrounding county during this time is sufficient evidence from which the fact finder could reasonably conclude, beyond a reasonable doubt, that Coburn obtained control of the five thousand dollars by creating the false impression in Mary's mind of the present fact he was in jail.

The evidence as to Count V is that Coburn told Mary "he was calling from Mayo's and that "they ... wanted him to go on to Texas ... [t]o another clinic ...," and asked for $2,500. Record at 140. Coburn himself admitted he did not call from the Mayo Clinic and had not been to the Clinic for over five years. Record at 372. This is sufficient evidence from which the fact finder could reasonably conclude beyond a reasonable doubt that Coburn obtained the $2,500 from Mary by creating a false impression as to the present fact of his presence at Mayo Clinic.

Further, a reasonable fact finder could certainly conclude as to Counts II and V that the false statements were made with the intent and purpose to obtain the use of Mary's money for some period, thereby depriving her of its use.

## II. OFFER TO REPAY

██ Coburn argues it was error to exclude evidence of his offer to repay the loan. During Mary's cross examination,

Coburn's counsel attempted to question her about a conversation in May of 1981 during which Coburn's ex-wife offered Mary a check in repayment of the loans. The State's objection was sustained. Coburn argues the offered evidence was relevant to the issue of his criminal intent.[4]

██ Relevancy is the logical tendency of evidence to prove a material fact, and is a question for the discretion of the trial judge. Where evidence is excluded for irrelevancy, we reverse only where a clear abuse of discretion is shown. *State v. Hall*, (1982) Ind., 432 N.E.2d 679. Here the excluded evidence did not have a logical tendency to prove or disprove the issue whether Coburn intended to *obtain the loan* of monies from Mary by creating a false impression as to his needs. To sustain its burden of proof the State had to prove the requisite criminal intent existed in Coburn's mind at the time he obtained control over the monies by creating a false impression. Any intent that might have existed in Coburn's mind as to repayment of the loan after he obtained control is not relevant to the crimes charged. Therefore, evidence of Coburn's offer to repay is not relevant to the question of whether he intentionally or knowingly obtained Mary's money by creating a false impression.

The State also had to prove Coburn had the intent to deprive Mary of the use or value of her property. Evidence of an offer to repay *following* the filing of criminal charges, and in exchange for dismissing charges, does not have a logical tendency to prove Coburn's intent *at the time* Mary delivered the money to him. The trial court did not err in excluding evidence of the offer to repay.

## III. VENUE

Coburn argues the trial was improperly venued in Hamilton County because the

---

**4.** Coburn also argues exclusion of evidence of the offer to repay prevented him from proving Mary's intent. However, Mary's intent is irrelevant to the disposition of this case.

 Coburn further argues evidence of the offer to repay should have been admitted because it is

"part of the res gestae of this case." Appellant's Brief at 16. He has waived this argument by failing to include it in his Motion to Correct Error. Ind.Rules of Procedure, Trial Rule 59(D); *Griffin v. State*, (1976) 357 N.E.2d 917, 171 Ind.App. 543.

alleged crimes did not take place in Hamilton County. We disagree.

 A defendant has a constitutional and statutory right to be tried in the county where the alleged crime was committed. Art. I, § 13, Constitution of Indiana; I.C. 35–1.1–2–1(a) (Burns Code Ed., Repl.1979); *Sizemore v. State*, (1979) 179 Ind.App. 217, 384 N.E.2d 1152. Under I.C. 35–1.1–2–1(d), if "the commission of an offense is commenced in one county and is consummated in another county, trial may be had in either of the counties." Although Coburn obtained physical possession of Mary's money outside Hamilton County, the offenses were commenced in Hamilton County because it was there the false impressions were created in Mary's mind that Coburn needed the money pursuant to his telephone conversations with her which she received in Hamilton County. Thus, though the telephone calls originated outside Hamilton County, it is proper to look to the place where the calls were received for venue. The evidence supports the fact finder's determination venue of the alleged offense existed in Hamilton County, Indiana, by a preponderance of the evidence.[5]

## IV. CONDUCT OF THE PROSECUTOR

Coburn alleges the deputy prosecutor's crying during defense counsel's closing argument was improper because it unnecessarily emphasized the thrust of the State's argument which was "largely based upon sympathy for a defenseless woman ..." (Appellant's brief at 19). He further claims it served to distract the jury from his argument.

Where allegedly improper prosecutorial conduct is in issue, the issue is whether the conduct is designed to arouse the passions of the jury or put the defendant in a position of grave peril. *Brumfield v. State*, (1982) Ind., 442 N.E.2d 973. Here there is no evidence the alleged misconduct was intended to do either. In this type of situation where the effect or impact of the unrecorded conduct is not and probably cannot realistically be reported in a written record we defer to the discretion of the trial judge who was on the scene and in the best position to evaluate the conduct, its propriety, its inadvertence, etc., and its impact, if any, on the jury the fairness of the proceeding.[6] Without, then, a showing of prejudice, we fail to find reversible error.

Judgment reversed on Counts I, III, IV and VI. Judgment affirmed on Counts II and V.

BUCHANAN, C.J., and SULLIVAN, J., concur.

---

5. The State must prove venue by a preponderance of the evidence. *Sizemore v. State*, (1979) 179 Ind.App. 217, 384 N.E.2d 1152.

6. We note the conduct was apparently unobtrusive in that Coburn's counsel was not aware of it until *after* he had concluded his argument.