**Robert Lee WILLNER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 82A04–9012–CR–604.

Court of Appeals of Indiana, Fourth District.

April 13, 1993.

Transfer Denied June 2, 1993.

Terry Noffsinger, Noffsinger, Price, Bradley and Shively, Evansville, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana and Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Robert Willner was convicted by a jury of bribery, a class C felony,[1] for advising a contractor that to obtain a particular contract with Vanderburgh County, the contractor would have to hire Willner's son for $1500. Willner was sentenced to two years of unsupervised probation, fined $1500, ordered to perform 200 hours of community service, removed from the Vanderburgh Board of County Commissioners and barred from holding public office for five (5) years. Willner claimed—among other things—that the Information failed to allege facts showing the charge was filed within the time required by the applicable statute of limitations. We agreed with Willner and reversed. *Willner v. State* (1992), Ind.App., 588 N.E.2d 581.

The State sought transfer. Our supreme court agreed with the State, vacated our opinion and remanded the case to us for consideration of the other issues raised by Willner. *Willner v. State* (1992), Ind., 602 N.E.2d 507. Willner raised nine issues in his brief, two of which were resolved by the supreme court. We restate Willner's remaining claimed errors as whether: (1) the trial court erred in failing to appoint a special prosecutor and in quashing the deposition of the prosecutor; (2) the trial court erred in limiting the testimony of one of Willner's witnesses; (3) the trial court erred in allowing a State's witness to give opinion testimony; (4) the evidence is insufficient to support his conviction; and (5) he was entitled to a new trial because of newly discovered evidence.

We find the trial court did not commit reversible error and affirm Willner's conviction.

### FACTS

The Vanderburgh County Commission is a county executive board of three elected commissioners who oversee county government. The county commissioners also serve as the county drainage board which supervises the maintenance of drainage ditches and approved drainage plans. The drainage board reviews ditch maintenance projects which have been recommended by the county surveyor. If a project is approved, the county surveyor solicits bids, examines the bids received, and makes a recommendation to the drainage board. All projects over $5000 must be advertised. For projects less than $5000, the county surveyor directly solicits three sealed bids. The final decision regarding the awarding of a bid rests with the drainage board.

In 1982, David Guillaum was the Vanderburgh county deputy surveyor and Fred Blumenauer was an assistant engineer for the City of Evansville. Guillaum and Blumenauer did each other favors. Blumenauer formed a company to perform ditch maintenance for the county. In the spring of 1982, Blumenauer and Guillaum determined that the Henry Ditch required maintenance, specifically, a number of large trees had grown in the ditch and needed to be removed. Blumenauer wanted the contract to remove the trees.

Guillaum then advised Willner of the Henry Ditch project and that Blumenauer wanted the contract. Willner advised Guillaum that if Blumenauer wanted to get the contract, Willner's son Bobby, a college student, would have to be hired by Blumenauer to work on the project. Guillaum advised Blumenauer of Willner's terms and stated that Willner wanted $1500. Blumenauer met with Willner and agreed to the $1500 payment. Blumenauer was later awarded a contract to clean the ditch for less than $5000, thus avoiding the advertising requirement for larger projects.

Once the bid was awarded, Blumenauer spoke with Bobby Willner about working on the project. Bobby refused the job. When Blumenauer informed Willner of his son's response, Willner allegedly said: "Well, that's tough. A deal is a deal." R. 342. Willner then recommended his son's friend, Drew Bryant, for the project. Blumenauer hired Bryant, but then fired him after Bryant had worked only a few hours because Bryant was not doing the work correctly. Although Bobby Willner never worked on the Henry Ditch project and

1. Ind.Code 35–44–1–1.

Drew Bryant worked only a few hours, Blumenauer drew a cashier's check for $1000 payable to Bobby Willner and Drew Bryant. He also allegedly gave the boys $400 in cash, shorting the agreed bribe by $100.

In 1986, Blumenauer got into difficulties—serious criminal charges—in Indiana and Ohio. He decided to make a deal with the Vanderburgh prosecutor in an attempt to lessen his sentences in both states. Blumenauer told of the 1982 bribe and was granted use immunity. Guillaum was also granted use immunity. A series of cases then developed in Evansville involving the mayor, the county surveyor, and the instant case.

## DECISION

### I. APPOINTING A SPECIAL PROSECUTOR AND DEPOSING THE PROSECUTOR

According to Willner, the "dark thread which is weaved throughout the fabric of this case is the inability of the defendant to obtain information about the facts which could help his case." Willner's Brief at 25. The information sought had to do with the credibility of the State's primary witness, Blumenauer, a convicted thief, forger, extortionist and child exploiter. *Id.*

Specifically, Willner claims that the trial court committed reversible error in denying his Motion for Appointment of a Special Prosecutor and in granting the State's Motion to Quash the deposition subpoena of the prosecutor, Robert Pigman, because the prosecutor was a necessary witness for the defense. Willner claims he was denied access to information necessary to impeach the State's key witnesses.

The appointment of a special prosecutor is governed by Ind.Code 33–14–1–6 which provides in pertinent part:

(b) A circuit or superior court judge: (4) may appoint a special prosecutor if:

(A) an elected public official who is a defendant in a criminal proceeding, files a verified petition requesting a special prosecutor within ten (10) days after the date of the initial hearing; and

(B) the court finds that the appointment of a special prosecutor is in the best interests of justice.

The motion was not filed within ten (10) days. However, the parties stipulated and the trial court agreed to consider the motion. Thus, the defense merely had to show that it "was in the best interest of justice" to appoint a special prosecutor. Willner claims he met his burden because he showed that the prosecutor, due to his investigative conduct, possessed non-privileged information material to this case which was not available from any other source.

The information Willner refers to is: (1) the basis for which the witnesses (Blumenauer and Guillaum) first decided to cooperate with the State; and (2) the terms of the initial bargain between Blumenauer and the State. The trial court did not agree with Willner because this information was available from other sources—Blumenauer and Guillaum. Willner was able to depose both witnesses and then extensively cross-examined each at trial. The information Willner required clearly was available from other sources. Therefore, it is equally clear that the prosecutor was not a necessary witness and there was no need to depose him. In addition, the State must disclose to a criminal defendant, on request, any material that is exculpatory or affects the credibility of a witness that is known to the prosecutor. *Fadell v. State* (1983), 450 N.E.2d 109, 115 *citing Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. Here, assuming Willner requested such information, if either Blumenauer or Guillaum testified falsely as to the content of the conversations between them and the prosecutor, the prosecutor had the duty to disclose that fact. Since he did not, we must assume that there was nothing in those conversations that may have further impaired these witnesses' credibility. *See also Richard v. State* (1978), 269 Ind. 607, 382 N.E.2d 899, 613, *cert. denied,* 440 U.S. 965, 99 S.Ct. 1515, 59 L.Ed.2d 781 *citing United States v. Agurs* (1976), 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342.

Willner also did not show how the prosecutor acted improperly by taking part in the investigation, in talking with potential witnesses and in offering immunity to these witnesses. Willner failed to met his burden—he did not show it was "in the best interests of justice" to appoint a special prosecutor. The trial court did not err in refusing to appoint a special prosecutor or in denying the attempt to depose the prosecutor.

## II. LIMITED TESTIMONY OF A DEFENSE WITNESS

Willner claims the trial court committed reversible error when it limited the testimony of Referee Magistrate Rita Mangini, the former Franklin County, Ohio, prosecutor responsible for the prosecution of Blumenauer, on charges of illegal use of a minor in nudity oriented materials, pandering sexually-oriented material to a juvenile, gross sexual imposition and endangering children. Willner wished to introduce testimony regarding the plea negotiations between the two prosecutors. He claims this information was needed to impeach the credibility of Blumenauer. The State claimed this testimony was irrelevant. The trial court stated:

I think that this witness can testify as to what the final plea agreement was entered into by Mr. Blumenauer in the State of Ohio, what the charges were, what penalty he received. Anything else concerning that transaction—but not the negotiations leading up to that plea agreement.

R. 609. The trial court also stated that "[t]he jury is entitled to know the agreement that became the basis of his [Blumenauer's] plea, in the State of Indiana, but preliminary negotiations leading up to that plea [are] not relevant...." R. 608. Willner claims that by limiting the witness's testimony, the trial court denied him the right to information bearing upon the motive of the State's key witness. In support of this argument, Willner quotes our supreme court where the court said that "[t]he bias, prejudice, or ulterior motive of a witness may properly be introduced as relevant to the issues of credibility and the weight to be given to a witness's testimony." *Hale v. State* (1989), Ind., 547 N.E.2d 240, 243.

Ms. Mangini testified that Blumenauer was charged with four second degree felonies. In a plea bargain between Blumenauer and the Franklin County prosecutor, Blumenauer pleaded guilty to one count and the prosecutor dropped the other three, on the condition that Blumenauer would get jail time. Ms. Mangini testified that the dropping of three counts in these situations was customary. R. 614. She then testified:

Q. (By Willner's counsel): Was it an unusual thing to enter into that kind of agreement with regard to Mr. Blumenauer?

A. No.

Q. Would you explain why?

A. Well, the caseload in Franklin County is incredible. We are a community of 600,000 people, and if I made everybody plead to all four counts, I'd be in trial from morning until night for the rest of my natural life. I also knew that all four counts involved the same activity. It was just different labels for the same activity, and my position was as long as he went to prison on the most serious count. Basically, what I did was throw him a bone by dismissing the other three counts.

R. 619. Blumenauer was given a two to fifteen year sentence to be served consecutively to his Indiana sentence. Ms. Mangini also testified that the decisions in Blumenauer's case were made by her alone and were nothing unusual. During the hearing out of the presence of the jury, Ms. Mangini also stated that no one in Indiana ever intervened in the Ohio process nor were there any agreements between the two prosecutors regarding Blumenauer. R. 598.

We do not understand how this testimony could possibly help Willner and agree with the trial court's ruling. The preliminary discussions between the two prosecutors were not relevant nor did they throw any light on *Blumenauer's* motive and/or

credibility. The jury heard the full and sordid details of Blumenauer's criminal history, both from the testimony of Ms. Mangini and from Blumenauer himself. The trial court did not err in limiting Ms. Mangini's testimony to the details of the actual plea agreement.

### III. IMPROPER OPINION TESTIMONY

■ Willner claims the trial court committed reversible error when it allowed Officer Darke of the Evansville Police Department to give his opinion as to whether the State's key witness, Blumenauer, was telling the truth. Willner's Brief at 44. Willner argues the trial court allowed a witness to invade the province of the jury. He states that it is the sole province of the jury to determine the credibility of witnesses.

During his *direct* examination of Officer Darke, *defense counsel* asked: "Have you previously stated that he [Blumenauer] could be summed up as a con artist?" Darke responded: "I think that would probably fit." R. 668. On cross-examination, the prosecutor then questioned Darke:

Q. Mr. Noffsinger [counsel for Willner] asked you about your opinion about Mr. Blumenauer. Do you feel that he tried to con you in this case?"

A. In which case?

Q. In this Henry Ditch Project.

Objection by Mr. Noffsinger. Discussion, objection overruled. Question repeated by court reporter.

A. No.

R. 676–677. Willner claims this answer is contrary to a long line of Indiana cases which state it is reversible error to allow one witness to testify as to the truthfulness of another witness's testimony. *Head v. State* (1988), Ind., 519 N.E.2d 151; *Lawrence v. State* (1984), Ind., 464 N.E.2d 923, *rev'd on other grounds, Lannan v. State* (1992), Ind., 600 N.E.2d 1334; *Thompson v. State* (1988), Ind.App., 529 N.E.2d 877.

The State claims that cross examination is permissible as to a subject covered on direct examination, including any matter which tends to elucidate, modify, explain, contradict or rebut testimony given during direct examination. *Hicks v. State* (1987), Ind., 510 N.E.2d 676, 679. The State concludes that since the defense, on direct examination, questioned Darke regarding his opinion of Blumenauer as a "con man," the trial court properly allowed the prosecutor to clarify Darke's testimony. The prosecutor also argued that "[h]e [Darke] didn't say he [Blumenauer] was telling the truth. He says he wasn't trying to con him in this case." R. 680.

We first note that the cases cited by Willner are not directly applicable in the instant case. All of these cases involved children who allegedly had been sexually molested. The issue in each was whether another witness (lay or expert) could testify as to the witness's belief in the child's credibility. Second, as this court noted in *Thompson, supra,* quoting our supreme court in *Lawrence, supra,* "[s]uch opinions will facilitate an original credibility assessment of the child by the trier of fact, *so long as they do not take the direct form of 'I believe the child's story,' or 'In my opinion, the child is telling the truth.'*" 529 N.E.2d at 879 *quoting* 464 N.E.2d at 925. If we simply apply the *Lawrence* standard to the testimony of Darke, it is clear that the testimony was admissible.

However, we also note a long line of cases that state it is within the sound discretion of the trial court to permit opinion testimony on any ultimate fact in issue. *See* 13 Robert L. Miller *Indiana Practice* § 704.101 (1992); *e.g., State v. Bouras* (1981), Ind.App., 423 N.E.2d 741. In *Porter v. State* (1979), 271 Ind. 180, 391 N.E.2d 801, *rev'd on other grounds, Fleener v. State* (1980), 274 Ind. 473, 412 N.E.2d 778, our supreme court found that cross examination "opened the door" for a police officer to state his opinion as to the truthfulness of defendant's statement to the police. *Id.* 391 N.E.2d at 811. In allowing the officer to state his opinion that the defendant was not telling the truth in his first statement, the court said that the "[a]dmission of opinion testimony on an ultimate fact issue is within the discretion of the trial court." *Id.*

We find the testimony of Darke is similar to that of the officer in *Porter.* Here, the direct examination of Darke by defense

counsel "opened the door" for the prosecutor's question on cross-examination. The trial court did not abuse its discretion is allowing Darke's answer.

## IV. SUFFICIENCY OF THE EVIDENCE

Willner claims the trial court erred by not granting his motion for judgment on the evidence and to set aside the verdict. Willner recognizes both issues are substantially the same—whether the evidence was sufficient to support his conviction. In reviewing the sufficiency of the evidence, we neither weigh the evidence nor judge the credibility of the witnesses. We look only to the evidence and all reasonable inferences which support the finding. If we find substantial evidence of probative value from which the fact finder could conclude guilt beyond a reasonable doubt, we must affirm. *Johnson v. State* (1992), Ind.App., 593 N.E.2d 208; *Canaan v. State* (1989), Ind., 541 N.E.2d 894, *reh'g denied* (1990), *cert. denied sub nom.*, 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 185 (1990); *Coburn v. State* (1984), Ind.App., 461 N.E.2d 1154.

To convict Willner of bribery, the State had to prove beyond a reasonable doubt that Willner solicited a payment from Blumenauer. The State presented the testimony of Blumenauer and Guillaum. Willner testified in his own defense and denied soliciting the payment. The State also entered into evidence the cancelled cashier's check made payable to Drew Bryant and Willner's son, Bobby. The State then proved that Bobby Willner made one of the endorsements on the check. Bobby testified that the other endorsement "looks like his [Bryant's] signature. R. 557. Bobby testified that he never worked on the Henry Ditch, did not remember endorsing the check, and did not know what the check was for. He then claimed that the payment might have been for work on another ditch project, the Kolb Ditch, but could not remember when he and Bryant worked on the Kolb Ditch. Bryant had left Indiana and refused to return to testify at Willner's trial.

Blumenauer testified that when he received payment for the Henry Ditch project

from the county, he drew a series of cashier's checks to pay his subcontractors. The check from the county was dated May 25, 1982. The cashier's checks are dated May 27, 1982, are sequentially numbered and were entered into evidence. One of these checks (# A692420. R. 209) is the check made out to Bryant and Bobby Willner.

Willner argues that the testimony of Blumenauer and Guillaum is inconsistent and that the entire scheme does not make sense. This is nothing more than an invitation to this court to reweigh the evidence and to judge the credibility of the witnesses. This we will not do.

The evidence is sufficient to support Willner's conviction for bribery.

## V. NEWLY DISCOVERED EVIDENCE

Finally, Willner argues the trial court erred in failing to grant his motion to set aside the judgment and grant him a new trial due to newly discovered evidence. An affidavit from Marion Dixon, the father of a girl Drew Bryant had dated in 1982, was attached to the motion and stated in relevant part:

In the summer of 1982, Drew [Bryant] mentioned that he was clearing a ditch in Vanderburgh County. He knew that I had a fireplace, and he mentioned that there were several trees he had cut down, and I could go to the site and get some firewood if I wanted. One of the weekends following that conversation, I went to the ditch with him and worked for a while, helping to cut down some of the bigger trees. The ditch was located northeast of Green River Road in Vanderburgh County, and was very far out in the county. I got a load of firewood and took it home.

It was my impression that Drew worked on the ditch project for at least several weeks. When Drew and I went to the ditch to get firewood, there were a lot of trees that had already been cut down, and I would estimate that at least a week's work had already been done when I saw the site.

Drew mentioned that he was hired with another friend to clear the ditch, but

he did not give me any indication of how much he was being paid or who was paying him.

R. 883. At the hearing on Willner's motion, he claimed that Dixon's statement was newly discovered evidence, that it directly contradicted Blumenauer's testimony regarding the amount of work Bryant did on the ditch, and also lends credence to evidence of Blumenauer's substantial payment to Bryant. The trial court did not agree.

 To obtain a new trial based on newly discovered evidence, the defendant must prove: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not merely cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced on a retrial of the case; and (9) it will probably produce a different result on retrial. *Hughes v. State* (1989), Ind., 546 N.E.2d 1203, 1210. The denial of a motion for a new trial based on newly discovered evidence will be reversed only if the trial court abused its discretion in concluding that a different result upon retrial would not have been possible. *Strain v. State* (1990), Ind.App., 560 N.E.2d 1272, 1274, *trans. denied* (1991).

At best, Dixon's statement would serve only to impeach Blumenauer's testimony that Bryant worked for merely a few hours on the project. At worst, it is irrelevant and contains inadmissible hearsay. For example, Dixon states that he visited the ditch project with Bryant in the summer of 1982. The Record shows the Henry Ditch project was completed and paid for by May 25, 1982. The trial court did not abuse its discretion in refusing to grant Willner a new trial.

Therefore, we affirm Willner's conviction for bribery.

CONOVER and SHIELDS, JJ., concur.